***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are correctly designated and named in the above caption.
2. The carrier on the risk for workers' compensation purposes is Travelers Insurance Company.
3. An employment relationship existed between plaintiff and defendant-employer on 27 October 1998. Furthermore, defendant-employer regularly employs three or more employees.
4. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage on 27 October 1998 was $787.20. This yields a compensation rate of $525.06.
6. On 27 October 1998, plaintiff was working as an alpha shear operator for defendant-employer. On that date, plaintiff, while threading a frame, stepped backwards on a metal plate, twisted her left ankle, and fell backwards. The employee injury report, dated that same day, states that plaintiff sprained her left ankle and bruised her left elbow. According to the Employee Dispensary Pass dated 27 October 1998, plaintiff's left ankle was swollen and had a limited range of motion. Plaintiff also complained of severe pain when standing. Plaintiff was sent to Highsmith-Rainey Hospital Emergency Room.
7. Defendants have paid all medical compensation for treatment of plaintiff's left ankle and left elbow. Moreover, defendant-employer provided appropriate light duty for plaintiff during all relevant periods of medical restrictions so there was no lost time from work as a result of plaintiff's 27 October 1998 injury by accident.
8. In addition to the deposition transcript of Dr. Wyker and the records attached thereto, the parties stipulated into evidence in this matter a packet of medical records marked as stipulated exhibit one. Thereafter, plaintiff submitted additional records from Dr. Logel that should have been included in the packet of stipulated medical records.
9. The issue to be determined by the Commission is whether plaintiff's left hip condition and the resulting need for medical treatment are causally related to plaintiff's compensable 27 October 1998 injury by accident.
10. Defendants further reserved the right to obtain an independent medical evaluation.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff injured her left ankle and left elbow when she slipped and fell backwards at work on 27 October 1998. Plaintiff completed an injury report, indicating that she had twisted her ankle and bruised her elbow.
2. Plaintiff reported that same day to the dispensary where she complained of a swollen and painful left ankle with limited range of motion, and a bruised left elbow. Plaintiff was sent to Highsmith-Rainey Memorial Hospital, where she reported the following day. X-rays were taken of plaintiff's left ankle and left elbow. Plaintiff was diagnosed with a sprained left ankle and a left elbow contusion, and was given crutches because she was unable to bear weight on her injured ankle.
3. Plaintiff was placed on light duty after this injury, and she did not miss any time from work because defendant-employer provided her with appropriate suitable light duty work. Defendants admitted liability for plaintiff's injury by accident and paid for all medical treatment for her ankle and elbow.
4. Plaintiff then began treating with Dr. Robert J. Logel, an orthopedist, on 4 November 1998. At this evaluation, plaintiff informed Dr. Logel that her elbow problems had basically resolved, but that she had continued to have ankle pain. Dr. Logel prescribed ankle exercises and partial weight-bearing.
5. In January 1999 plaintiff returned to full-duty work with no restrictions and no permanent functional impairment. By 26 January 1999, Dr. Logel noted that plaintiff had only occasional ankle pain, no elbow pain, and had stopped taking medication. Dr. Logel released plaintiff from his care at this time.
6. The first mention of plaintiff's complaints of left hip pain appeared in August 1999, ten months after the admittedly compensable injury by accident, when plaintiff returned to Dr. Logel and reported that "[s]everal months ago" she started having pain in her left hip. Dr. Logel diagnosed probable early arthritis. The medical note from 19 August 1999 does not attribute plaintiff's hip complaints to any particular cause or event.
7. The first mention in the employer's records of problems with plaintiff's left hip came on 16 October 1999 when plaintiff asked to be seen at the dispensary for left hip pain. At this time, almost exactly one year after the admittedly compensable injury by accident, plaintiff related her hip pain to the fall at work on 27 October 1998. The record does not indicate that defendants paid medical compensation for treatment of plaintiff's left hip.
8. From this point on, the medical records attribute plaintiff's left hip pain to the 27 October 1998 injury by accident, and most physicians appeared willing to accept plaintiff's accounts that the problems with her left hip surfaced at or shortly after the 27 October 1998 fall at work. Plaintiff was evaluated and/or treated by a number of physicians, including Drs. Vaught, Jones, Dalldorf, and Wyker, for her left hip complaints. Plaintiff also underwent short courses of chiropractic treatment and physical therapy. Most of these physicians, with the exception of Dr. Robert Wyker, treated plaintiff on only one or at most several occasions.
9. Plaintiff first reported to Dr. Wyker, an orthopedic surgeon, on 31 August 2000. According to Dr. Wyker's notes, plaintiff again attributed her hip complaints to the 27 October 1998 injury by accident. Plaintiff reported to Dr. Wyker that she had experienced persistent back and left hip pain over the preceding two years. Plaintiff continued to treat with Dr. Wyker, and on 20 October 2000 Dr. Wyker performed an arthoscopy of plaintiff's left hip. The procedure confirmed a recent MRI diagnosis of torn labrum. Dr. Wyker debrided and cleaned the torn portion of plaintiff's hip.
10. As a result of the surgical procedure on her left hip, plaintiff was totally disabled beginning 18 October 2000. Dr. Wyker indicated in his deposition that plaintiff was totally disabled for a period of approximately six weeks post-surgery, and thereafter she was probably capable of light-duty, sedentary work. Dr. Wyker assigned a permanent partial impairment rating of ten percent to plaintiff's left leg.
11. Dr. Wyker, the only medical expert deposed, stated that plaintiff's left hip problems could not have developed solely due to degenerative changes, but that some trauma had to have been involved. Due to plaintiff's accounts of the fall on 27 October 1998 and her history that her left hip had given her trouble since the date of the injury, Dr. Wyker initially believed that the 27 October 1998 injury by accident was the cause of plaintiff's subsequent left hip problems.
12. Plaintiff argues in her brief that the fact that she was on crutches for a short period of time after the injury by accident decreased the pressure on her hip, and therefore even though her hip problems were caused by the injury, she did not notice or experience problems with her hip for a period of time. In addition, plaintiff also argues that problems with endometriosis also masked her hip problems and pain. When presented with these contentions at his deposition, Dr. Wyker agreed that using the crutches or the gynecological problems might have masked a hip injury. However, he went on to state that he still would expect an individual with a hip injury to feel and notice pain. Further, as soon as plaintiff started weight bearing, if the hip pain did not show up right away, Dr. Wyker felt that fact made it difficult to determine the cause of the injury.
13. Upon further review of the employer and medical records in this matter which show that plaintiff failed to mention left hip pain to the employer or any physician until ten months after the accident, Dr. Wyker amended his opinion to state and the Commission so finds that the 27 October 1998 injury by accident did not cause plaintiff's hip condition. The problems with plaintiff's hip were caused by trauma, and had plaintiff injured her hip on 27 October 1998, according to Dr. Wyker, she would have experienced pain and problems shortly after the injury. Plaintiff also probably would have sought medical treatment sooner than ten months after the injury by accident if this accident was indeed the cause of plaintiff's hip problems.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Sneadv. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id. In Reinninger v.Prestige Fabricators, 136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82.
2. In the case at bar, defendants admitted the compensability of plaintiff's injury by accident on a "medicals only" basis. Plaintiff missed no time from work due to the injuries to her left elbow and ankle and therefore no indemnity compensation was paid by defendants. The facts and circumstances present in Parsons and Reinninger, supra, are not present in this case. In both Parsons and Reinninger, supra, the treatment involved the same condition or body part as the original injury (headaches in Parsons, the back in Reinninger). Here, plaintiff now claims injury to her left hip, but the original compensable injury was to her left elbow and ankle. In addition, in the case before us, there is no form agreement for payment of compensation or award of the Commission. Therefore, the Parsons presumption does not apply under the circumstances present in this case and the burden remained on plaintiff to establish a causal relationship between the original compensable injury and the left hip condition. Based upon the greater weight of the medical evidence of record, plaintiff failed to sustain her burden of proof. Plaintiff's left hip condition is not causally related to plaintiff's admittedly compensable injury by accident. See, Porter v.Fieldcrest Cannon, Inc., 133 N.C. App. 23, 514 S.E.2d 517 (1999).
3. Accordingly, plaintiff is not entitled to additional medical or indemnity benefits as a result of her left hip problems. N.C. Gen. Stat. §§ 97-2(6), -25, -29.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim to have medical and indemnity benefits paid as a result of her hip problems must be, and the same is HEREBY DENIED.
2. Each party shall bear its own costs of this proceeding.
3. Defendants shall pay a reasonable expert witness fee of $500.00 to Dr. Wyker for his deposition testimony in the case.
This the _____ day of April 2002.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
LKM/mhb