* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, to receive further evidence, or to amend the prior Opinion and Award, except for minor modifications. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between employee-plaintiff and employer-defendant on or about June 28, 2000.
3. The carrier liable on the risk is correctly named above.
4. Employee-plaintiff sustained an injury on or about June 28, 2000.
5. The injury arose out of employee-plaintiff's employment and is compensable.
 * * * * * * * * * * *
Based upon the competent evidence of record and upon the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 53 years old. The hearing had been requested by plaintiff by the timely filing of a Form 33 Request that Claim Be Assigned for Hearing, filed with the Industrial Commission on August 9, 2002, well within two years of the last payment of workers compensation by defendants.
2. Plaintiff sustained an admittedly compensable injury by accident on June 28, 2000, while employed by defendant True Value Hardware. Plaintiff became employed by True Value in 1997. On June 28, 2000, plaintiff was checking in merchandise in the back room. Plaintiff picked up a tote and turned to set it down when she felt a sharp pain in her back. Plaintiff reported the accident to her boss, Gary Williams, and was sent to Doctors Urgent Care in Myrtle Beach.
3. Plaintiff was seen at Doctors Urgent Care on June 29, 2000. Plaintiff was instructed to perform only light duty until July 8, 2000. On August 1, 2000, plaintiff returned to Doctors Urgent Care. Plaintiff was diagnosed with sciatica and was referred to an orthopedic physician. Plaintiff was instructed to remain out of work until she was evaluated by an orthopedic physician and had an MRI performed.
4. Plaintiff's job with True Value Hardware was eliminated in August 2000 while she was out of work pursuant to doctor's orders. Defendants paid her temporary total disability benefits until she began work with Lowe's in September, 2000.
5. On referral from Doctors Urgent Care, plaintiff was initially evaluated by Dr. Jarrett at Strand Orthopaedic Consultants on August 18, 2000. In addition to lower back pain, plaintiff was also suffering from pain radiating down her left leg. Dr. Jarrett reviewed x-ray's that had been performed by Dr. Hilz, which revealed some lumbar scoliosis and degenerative disease at L4-5 and S1. Plaintiff was diagnosed with degenerative joint disease of the lumbosacral spine and acute lumbosacral strain syndrome with radiating left leg pain. Dr. Jarrett recommended an MRI to rule out a herniated disc at L4-5. Because plaintiff was claustrophobic, Dr. Jarrett recommended that an open MRI be performed. This open MRI was performed on August 23, 2000. This MRI revealed sacralization at L5, a Terlov cyst at S1, and facet athropathy at L4-5. Dr. Jarrett referred plaintiff to obtain follow up treatment with Dr. Bauerle.
6. On September 8, 2000, Dr. Bauerle reviewed the MRI that was performed on August 23, 2000, and did not believe plaintiff to be a surgical candidate. Dr. Bauerle referred plaintiff to Dr. McDonald, a physiatrist, for further evaluation and treatment of her lower back pain.
7. Plaintiff was initially seen by Dr. McDonald at Coastal Rehabilitation Medicine Associates on September 25, 2000. Plaintiff explained to Dr. McDonald that her pain was constant, but was worse after standing or after performing her activities of daily living. Dr. McDonald diagnosed plaintiff with degenerative lumbar spine status post lumbar strain. Dr. McDonald performed an injection of Marcaine into plaintiff's left posterior superior iliac spine trigger point area, gluteal attachment. Dr. McDonald also recommended physical therapy. Plaintiff was next seen by Dr. McDonald on October 19, 2000. Dr. McDonald diagnosed her with sacroiliac dysfunction and instructed her to continue physical therapy.
8. On December 1, 2000, plaintiff was experiencing a significant amount of pain. Plaintiff explained to Dr. McDonald that she had been doing some stretching with physical therapy, and the following day she had a severe onset of low back pain with radiation down her left leg. A physical examination revealed positive straight leg raising. Dr. McDonald diagnosed plaintiff with low back pain consistent with her initial injury. Dr. McDonald was suspicious of facet arthropathy and some nerve root compression. Dr. McDonald recommended a CT scan.
9. Based on Dr. McDonald's recommendation, plaintiff returned to Dr. Bauerle on December 11, 2000. Dr. Bauerle also reviewed the CT scan that was performed on December 5, 2000, which revealed evidence of facet arthropathy at L4-5 and L5-Sl. Dr. Bauerle recommended that a closed MRI be performed. A closed MRI was performed on December 11, 2000. Dr. Bauerle reviewed this MRI film during plaintiff's next visit on December 18, 2000. The closed MRI performed on December 11, 2000, revealed nerve root compression on the left at the S1 nerve root. Dr. Bauerle indicated in his medical note of this date that the findings of the MRI corresponded with plaintiff's clinical symptoms. Dr. Bauerle recommended an L5-Sl transforaminal epidural steroid injection with left Sl selected nerve root block. Dr. Bauerle recommended that plaintiff remain out of work.
10. On January 8, 2001, Dr. McDonald performed an injection into plaintiff's right gluteal and deep piriformis area.
11. Between January of 2001 and March of 2002, plaintiff did not receive any medical treatment. During that time, plaintiff continued to suffer from pain.
12. Plaintiff did not return to Dr. Bauerle again until March 22, 2002. During this appointment, Dr. Bauerle diagnosed her with recurring progressive left S1 radiculopathy with left S1 foraminal narrowing. Dr. Bauerle recommended a repeat MRI. This MRI was performed in April 2002 and revealed L5-Sl left foraminal stenosis with left Sl nerve root compression. Dr. Bauerle indicated on April 10, 2002, that plaintiff's symptoms had gotten progressively worse and noted that on examination she had a neurologic deficit with plantar flexion and decreased light touch and pinprick sensation in the 51 dermatome. Dr. Bauerle recommended that plaintiff undergo a left L4-5 laminectomy and facetectomy. Plaintiff was unable to undergo the surgery as recommended by Dr. Bauerle as the defendant-carrier refused to authorize this surgery. Dr. Bauerle stated in his note of June 10, 2002, that further delays in decompressing plaintiff's nerve root could have negative long-term sequela. Dr. Bauerle also noted that even though plaintiff was continuing to work in a limited fashion, she was markedly limited and her functional capacity had diminished significantly.
13. Plaintiff has been employed at Lowe's as the head cashier since September of 2000. Her duties include checking customers' receipts as they leave the store, supervising the other cashiers, and occasionally filling in as a cashier. Early in her employment, she was required to climb a 10 to 12 stepladder and retrieve items from a metal cage where inventory was kept. Plaintiff would also have to count inventory while on the ladder, which would take her approximately a half hour per week. This activity would sometimes cause plaintiff's back pain to increase, so this duty was discontinued.
14. Dr. Bauerle indicated that it was impossible to tell how much of plaintiff's deterioration and condition could be attributed to her original work-related injury, her activities at Lowe's, or her normal activities of daily living.
15. During the months immediately prior to June 28, 2000, plaintiff did not experience low back pain. From June 28, 2000, through the date of the hearing before the Deputy Commissioner in this matter, plaintiff has experienced constant low back pain, which has fluctuated in intensity. Although the injury of June 28, 2000, may not have been the only cause of plaintiff's pain at the time of her return to Dr. Bauerle on March 22, 2002, the injury was a substantial contributing factor to that pain.
16. Dr. Bauerle has not indicated what permanent partial disability, if any, plaintiff retains as a result of her June 28, 2000 injury.
17. Based upon all of the medical evidence of record, the Full Commission finds as fact that the services rendered by the medical providers identified in the medical evidence were reasonably necessary to effect a cure, relieve pain, or to lessen the period of disability.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on or about June 28, 2000. Defendants admitted it was compensable, paid some medical bills, and paid some temporary total disability compensation to plaintiff. N.C. Gen. Stat. § 97-2(6).
2. As of June 28, 2000, plaintiff had an average weekly wage of $360.00 and a compensation rate of $240.01. N.C. Gen. Stat. §97-2(5).
3. The greater weight of the competent evidence of record does not support a conclusion that plaintiff suffered a specific traumatic incident during her employment with Lowe's. Although plaintiff did suffer an increase in symptoms on occasion during that employment, the Full Commission concludes that these were not new injuries but rather were aggravations of the original injury plaintiff suffered on June 28, 2000. N.C. Gen. Stat. §97-2(6).
4. The record does show, by the greater weight of the evidence, that plaintiff's need for surgery is causally related to her injury of June 28, 2000. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred as a result of her compensable injury of June 28, 2000, as may reasonably be required to effect a cure, provide relief, or lessen her period of disability, including the surgery recommended by Dr. Bauerle. Defendants shall pay for, or reimburse those who paid for, all of the treatment with respect to this compensable injury reflected in the medical records introduced into evidence in this matter. N.C. Gen. Stat. § 97-25.
6. Plaintiff is entitled to temporary total disability benefits at the rate of $240.01 per week during any weeks of disability during her recovery from the surgery recommended by Dr. Bauerle. N.C. Gen. Stat. § 97-29.
7. Plaintiff has not been rated by any physician and plaintiff's status concerning any permanent partial disability remains unresolved and is thus reserved for future determination. N.C. Gen. Stat. § 97-31.
8. Although "[a] person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from the accident," Snead v. Sandhurst Mills, Inc.,8 N.C. App. 447, 451, 174 S.E.2d 699, 702 (1970), the following quote fromParsons v. Pantry, Inc., 126 N.C. App. 540, 542,485 S.E.2d 867, 869 (1977) is directly applicable to this case (substitute back pain for headaches):
 Plaintiff met this burden, as evidenced by the Commission's initial opinion and award, from which there was no appeal, granting her medical expenses and future medical treatment. In effect, requiring that plaintiff once again prove a causal relationship between the accident and her headaches in order to get further medical treatment ignores this prior award. Plaintiff met her causation burden; the Industrial Commission ruled that her headaches were causally related to the compensable accident. Logically, defendants now have the responsibility to prove the original finding of compensable injury is unrelated to her present discomfort. To require plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees.
9. In an action for additional compensation for medical treatment, the medical treatment sought must be "directly related to the original compensable injury." Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc.review denied, 343 N.C. 513, 472 S.E.2d 18 (1996). If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury. Id. See also Reinninger v. PrestigeFabricators, Inc., 136 N.C. App. 255, 523 S.E.2d 720 (1999).
10. For purposes of application of Parsons and Reinninger,
defendants' judicial admission of compensability with respect to plaintiff's June 28, 2000, back injury is equivalent to the initial Opinion and Award in Parsons and the Form 21 agreement approved by the Industrial Commission in Reinninger, creating a rebuttable presumption that the treatment is directly related to the original compensable injury, and defendants have the burden of producing evidence showing the treatment is not directly related to the compensable injury. Defendants' position that the medical testimony was insufficient to relate the treatment sought to the admittedly compensable injury is, in addition to contrary facts found by the Full Commission, outweighed by defendants' failure to produce evidence showing the treatment is not directly related to the compensable injury.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury of June 28, 2000, as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the surgery recommended by Dr. Bauerle. Defendants shall pay for, or reimburse those who paid for, all of the treatment with respect to this compensable injury reflected in the medical records introduced into evidence in this matter.
2. Defendants shall pay plaintiff temporary total disability benefits in the amount of $240.01 per week during any weeks plaintiff is unable to work during her recovery from the surgery recommended by Dr. Bauerle.
3. Plaintiff's attorney is due an attorney fee of twenty-five percent (25%) of any temporary total disability benefits paid to plaintiff during her disability as a result of the surgery referenced above.
4. At the appropriate time, employee-plaintiff will be entitled to an evaluation regarding the amount of permanent partial disability, if any, she retains as a result of her injury of June 28, 2000.
5. Defendants shall pay the costs.
This 14th day of June 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER