JOSEPHINE SNEAD, EMPLOYEE, PLAINTIFF v. SANDHURST MILLS, INC., EMPLOYER; LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7020IC203

(Filed 24 June 1970)

**1. Master and Servant § 96— appeal from Industrial Commission — questions presented**

In passing upon an appeal from an award of the Industrial Commission, the Court of Appeals is limited in its inquiry to the questions of whether there was any competent evidence before the Commission to support its findings and whether such findings justify the Commission's legal conclusions and decisions.

**2. Master and Servant § 96— findings by Industrial Commission — appellate review**

The findings of the Industrial Commission are conclusive on appeal if they are supported by any competent evidence even though there is evidence to support a contrary finding.

**3. Master and Servant § 94— sufficiency of evidence to support award**

In this Workmen's Compensation proceeding, findings by the Industrial Commission are supported by competent evidence and justify its conclusion that plaintiff's temporary total disability terminated on a specified date and that plaintiff sustained a 5% permanent partial disability to her back as a result of the accident in question.

**4. Master and Servant § 69— "disability" defined**

"Disability" as used in the Workmen's Compensation Act means impairment of wage earning capacity rather than physical impairment.

**5. Master and Servant §§ 66, 69— total disability to work — mental condition resulting from accident — insufficiency of evidence**

Plaintiff's evidence was insufficient to support her contention that she is entitled to compensation for total disability to work on account of a hysterical conversion reaction resulting from her injury, where the only medical evidence directly relating any disability as the result of a mental condition to the accident in question assigned a 5% disability as a result of plaintiff's psychological problem, the amount of permanent disability found by the Commission.

APPEAL by plaintiff from an opinion and award of the North Carolina Industrial Commission of 12 November 1969.

On 19 July 1968, plaintiff sustained an injury, compensable under The North Carolina Workmen's Compensation Act, G.S. 97-1 *et seq.*, while employed by Sandhurst Mills, Inc. She thereafter entered an agreement with her employer for payment of temporary total disability up to and including 19 December 1968. On 21 April 1969 a hearing was held before Deputy Commissioner Leake for the sole purpose of determining what amount, if any, plaintiff is entitled to recover for temporary total disability or for permanent disability.

On 8 May 1969, Deputy Commissioner Leake filed an order finding and concluding that plaintiff was temporarily totally disabled from 19 July 1968 through 19 December 1968, and that she had sustained a 5% permanent partial disability to her back as a result of the accident of 19 July 1968. Plaintiff appealed to the Full Commission which, on 10 November 1969, adopted the opinion and award of the Hearing Commissioner. Plaintiff appealed from the order of the Full Commission to this court.

*John Randolph Ingram for plaintiff appellant.*

*Mason, Williamson and Etheridge by James W. Mason for defendant appellees.*

GRAHAM, J.

Plaintiff contends that she is entitled to compensation for total disability to work because of a conversion reaction caused by her physical injury resulting from the accident and that the Commission erred in failing to make findings to this effect.

It was stipulated at the hearing that all medical reports on file with the Commission could be received into evidence. These reports indicate that plaintiff has been examined by at least nine medical doctors regarding the complaints which she attributes to the accident. The 30 October 1968 report of Dr. Robert E. Miller, an orth-

opedic surgeon who treated plaintiff extensively, is typical of the various medical findings. His report states:

> "This is a further note on the above named patient, who was again in my office on October 8, 1968. At the present time, she is still complaining bitterly of pain in her back and radiation into the leg and buckling of the leg. On examination, I can find no evidence of muscle weakness. The recumbent leg tests are very minimally positive, as are the cross leg tests. The neurological examination remains within normal limits. She has marked tenderness in her lower back but she is very hyperreactive. I injected the lower back with Xylocaine, advised her to continue to wear her corset. She states that she is unable to do the job that she is required to do and I would suggest if there is any possible way, that she be put to a lighter type job where she does not have to sit all the time. Perhaps a combination of sitting and standing would be of great benefit and *I think she could return to work if she would.* I still feel that there is a severe aspect of psychoneurosis here in addition to a moderate sprain of the lumbosacral spine." (Emphasis added).

The record shows that in response to Dr. Miller's suggestion, plaintiff was offered light work by her employer. The job would have permitted her to sit or stand, or alternate between sitting and standing. Plaintiff agreed to accept the job and to start work on 18. November 1968; however, she failed to do so and had not returned to work on the date of the hearing.

Dr. Archie Coffee, a neurosurgeon, examined plaintiff at Dr. Miller's request. He reported:

> "IMPRESSION: Hysterical conversion reaction — The differential diagnosis in this instance really rests between a hysterical conversion reaction and frank outright malingering. One cannot make a positive diagnosis of the latter at the present time. It is rather the examiner's feelings that this is most likely hysterical. Continued conservative measures with encouragement, and reassurance should be employed."

On 20 December 1968, Dr. Miller stated in a report to the defendant insurance carrier: "As far as her objective physical ability to work, I would think that she could work. I do not think that her present hysterical conversion reaction will allow her to work with the present mental attitude."

In February of 1969, plaintiff was admitted to the Moore

Memorial Hospital in Pinehurst under the care of Dr. William F. Hollister. In a report, dated 13 February 1969, Dr. Hollister stated:

"Interpretation: I could find no evidence from the physical examination or study of the x-rays of the lumbar spine and pelvis of any physical reason for this patient's persistent complaints. The stocking distribution of hypesthesia and hypalgesia would indicate that there is no anatomical abnormality producing this condition.

In view of these findings, a psychiatric evaluation was carried out by one of our staff psychiatrists, Dr. Donald Schulte, and his report can be obtained by writing to him directly to the Sandhills Mental Health Clinic, Pinehurst, N. C."

The record does not contain the report of the psychiatrist.

The latest report appearing in the record is that of Dr. R. L. May, dated 18 April 1969. He stated:

"It is felt that the patient did sustain an injury as described in July 1968, to the area described, but there is very little objective evidence, if any, of real disability other than the fixation that the patient has developed because of this injury.

Because of this, it is recommended that there is approximately five per cent (5%) disability, but I believe this is primarily a psychological problem."

[1] In passing upon an appeal from an award of the Industrial Commission, this court is limited in its inquiry to two questions of law, namely: (1) Whether there was any competent evidence before the Commission to support its findings; and (2) whether the findings of fact of the Commission justify its legal conclusions and decisions. *Byers v. Highway Comm.*, 275 N.C. 229, 166 S.E. 2d 649; *Petty v. Associated Transport*, 4 N.C. App. 361, 167 S.E. 2d 38.

[2, 3] It is well established that the findings of the Industrial Commission are conclusive on appeal if they are supported by any competent evidence and even though there is evidence which would support a finding to the contrary. *Eaton v. Klopman Mills, Inc.*, 2 N.C. App. 363, 163 S.E. 2d 17. It is our opinion, and we so hold, that the findings made by the Commission are supported by competent evidence and justify its conclusion that plaintiff's temporary total disability terminated on 19 December 1968.

[3-5] Plaintiff argues strenuously that the evidence raises the issue of her total disability to work on account of a "hysterical conversion reaction" resulting from her injury. It is true that

" '[d]isability' as used in the Workmen's Compensation Act means impairment of wage earning capacity rather than physical impairment." *Morgan v. Furniture Industries, Inc.,* 2 N.C. App. 126, 128, 162 S.E. 2d 619; *Burton v. Blum & Son,* 270 N.C. 695, 155 S.E. 2d 71; *Anderson v. Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265. However, the only medical evidence directly relating any disability as the result of a mental condition to the accident in question is in the report of Dr. May. He specifically connected the two and assigns approximately 5% disability as a result of plaintiff's psychological problem. This is the exact permanent disability found by the Commission and supports completely the Commission's finding on this issue.

Plaintiff has not cited the case of *Morgan v. Furniture Industries, Inc., supra,* in support of her contentions. We nevertheless think it important to point out that in that case there was competent medical opinion evidence tending to show that plaintiff was totally disabled and incapacitated emotionally and physically to engage in any gainful work *as a result of a compensable injury.* For that reason the case was remanded to the Industrial Commission for findings on that determinative question. Here, such evidence is totally lacking. A person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from the accident. *Henry v. Leather Co.,* 231 N.C. 477, 57 S.E. 2d 760. Even if plaintiff's evidence was sufficient to show that she is totally incapacitated as a result of a psychological problem, we think it totally insufficient to show that the problem was caused by the accident or her injury resulting from the accident. For the requisites of medical proof of causation see *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.