* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with modifications regarding plaintiff's entitlement to temporary total disability compensation.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. All parties are properly before the Industrial Commission, and there is no issue as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between plaintiff and defendant-employer on or about May 17, 2005.
4. Defendant-carrier was the carrier on the risk on May 17, 2005.
5. Plaintiff was working as a finishing clerk and switchboard operator for employer-defendant at its Lilesville plant on May 17, 2005.
6. Plaintiff suffered an admittedly compensable injury by accident in the course and scope of her employment as a finishing clerk for defendant-employer. Plaintiff contends the injury by accident is to her back and left leg. Defendants have accepted the compensability of plaintiff's back injury.
7. The following were entered into evidence by stipulation:
 a. The Pretrial Agreement; and
 b. Various documents set forth in the Pre-Trial Agreement, including medical records, Industrial Commission forms, and expert medical depositions.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on December 23, 1954. Plaintiff is a high school graduate and completed one year of college. Plaintiff was diagnosed with cerebral palsy at birth and continues to carry that diagnosis, with associated symptoms. Plaintiff also has scoliosis. *Page 3 
2. Plaintiff worked for a bank, a manufacturing company, and a retail store prior to her employment with defendant-employer.
3. Plaintiff went to work for defendant-employer in 1989 as a finishing clerk and switchboard operator. Approximately seven hours a day she did paperwork and filing and answered phones occasionally. Plaintiff used a buggy at work to assist her in walking around the plant floor and picking up samples for her inspection work as a finishing clerk and to steady herself as she walked. This was a sedentary job that did not require significant physical exertion or mobility from plaintiff, such that she was able to perform the job despite the existence of her cerebral palsy.
4. In 2004, plaintiff had a cardiac event, which she described as a "heart blockage." Plaintiff had two stints placed in her during that time, and she missed approximately one month from work.
5. Plaintiff began treating with Nurse Practitioner, Ms. Gerri Patterson of Pain Management Group of North Carolina, in April 2004 for chronic lower back pain related to preexisting degenerative disc disease and facet arthropathy, mobility problems, and leg pain. In 2004, plaintiff had been treated with chronic opioid therapy for her back pain to a point where she was able to work fulltime. At that time, plaintiff was still experiencing difficulty walking as a result of back pain. An MRI was obtained in the fall of 2004, which revealed, among other things, a bulging disc at T11-T12.
6. Plaintiff continued to treat on a monthly basis for her chronic back pain with pain levels generally in the range of two to six out of 10. Plaintiff's level of pain waxed and waned depending on her level of activity. On January 13, 2005, plaintiff experienced an increase in *Page 4 
pain after spending time with her husband in the hospital. Ms. Patterson's notes reflect a similar complaint on February 8, 2005.
7. On April 7, 2005, approximately one month prior to plaintiff's injury, she experienced an increase in low back pain, difficulty with mobility and stress. Plaintiff's work was starting to "take a toll" on her and Ms. Patterson advised her to "look into obtaining disability" because her condition was significantly declining.
8. At approximately 11:50 a.m., on May 17, 2005, plaintiff was walking toward the break room when the back end of her buggy ran into a hole. Plaintiff fell on her left side, with the buggy on top of her. Plaintiff experienced pain in her back following this event. Defendants accepted plaintiff's back injury claim as compensable and initiated indemnity benefits and medical compensation. Plaintiff's average weekly wage is $372.30.
9. Plaintiff was immediately taken to the emergency room at Anson Community Hospital, Wadesboro, North Carolina. Plaintiff complained of left lower arm pain, back and neck pain, and a bruised left leg as a result of a fall. Plaintiff was discharged from the emergency room and her subjective pain level at the time of discharge was a ten on a scale of one to ten. X-rays of plaintiff taken on May 17, 2005, indicated that there existed a mild, age indeterminate compression fracture of the L2 vertebrae.
10. Plaintiff first came under Dr. Obinna Igwilo's care on May 23, 2005, upon referral of defendant-employer's company nurse. At that time, plaintiff gave Dr. Igwilo a history of injuring her back at work six days earlier when she tripped into a shallow hole. She complained of low back pain, leg pain, and migraine headaches. Plaintiff denied any history of back pain prior to her fall. *Page 5 
11. Dr. Igwilo's physical examination of plaintiff was mostly unremarkable. The only objective finding he observed was tenderness in the low back. Dr. Igwilo reviewed x-rays that had been taken of plaintiff at the emergency room, and deferred to the radiologist's interpretation that there was a mild compression fracture revealed on the film and that it was of indeterminate age. According to Dr. Igwilo, a compression fracture will typically heal in 6 to 12 weeks. Most patients who experience compression fractures have complete recoveries and most retain no residual disability as a result thereof.
12. In his deposition, Dr. Igwilo could not state to a reasonable degree of medical certainty that the compression fracture was related to plaintiff's compensable injury, nor could he state to a reasonable degree of medical certainty that the problems for which he examined plaintiff were caused or aggravated by her compensable injury. Furthermore, Dr. Igwilo could not say to a reasonable degree of medical certainty that any disability currently experienced by plaintiff was related to her compensable injury.
13. Ms. Patterson examined plaintiff on May 31, 2005. Plaintiff reported a subjective pain level for her lower back of six out of ten. Ms. Patterson reviewed a copy of the x-ray films taken of plaintiff following the accident and noted a mild compression fracture of indeterminate age at L2. On May 31, 2005, plaintiff continued to have pain upon palpation of her entire lumbar spine and over the facet joints.
14. Dr. Henry Moyle, a neurosurgeon, saw plaintiff on referral from Dr. Igwilo, beginning on June 1, 2005. Plaintiff rated her back pain as a 10 out of 10. Dr. Moyle reviewed an MRI performed in 2004, which reportedly revealed degenerative disc disease at the L1-L2 level. Dr. Moyle confirmed that virtually everyone has degenerative disc disease to some extent, and that it occurs differently in different people. Dr. Moyle stated it would be impossible to *Page 6 
know what level of degenerative disc disease plaintiff might have exhibited with or without her compensable injury.
15. Dr. Moyle ordered a new MRI in order to assess any change in plaintiff's condition. By July 25, 2005 he had the MRI results in hand and reported that the films showed a disc herniation at T11-T12. However, Dr. Moyle did not feel that the disc at T11-T12 was causing plaintiff's complaints. Similarly, there was a mild disc bulge at L1-L2, but Dr. Moyle did not feel it was the source of plaintiff's complaints. The disc herniation and bulge were not affecting plaintiff's spinal cord or irritating any nerve roots.
16. Dr. Moyle testified that the only basis he would have to draw any causal connection between plaintiff's complaints and her symptoms was the temporal relationship between the two. Plaintiff did not tell Dr. Moyle about any of her pre-existing back problems, nor was any mention of the same included in plaintiff's counsel's hypothetical question during the deposition. Dr. Moyle acknowledged that the introduction of prior symptoms into the equation would make the temporal relationship even weaker. 17. On September 12, 2005, Dr. Sivakum Jaikumar, a neurosurgeon, performed an examination of plaintiff which revealed weakness and swelling in plaintiff' legs. However, plaintiff's complaints of pain did not match a T12 distribution. Plaintiff's exhibited disc bulge was of indeterminate age, and, accordingly Dr. Jaikumar could not testify that the bulge was the cause of plaintiff's symptoms. Rather, Dr. Jaikumar felt plaintiff's back pain was long-existing due to her history of cerebral palsy and did not feel that surgical intervention would likely benefit plaintiff.
18. Dr. Jaikumar was unable to draw a connection between the fall and plaintiff's symptoms. At best, Dr. Jaikumar testified that it was "possible" that there was some connection. *Page 7 
Dr. Jaikumar was not asked about plaintiff's alleged disability, and offered no opinion relating thereto.
19. In early 2006, plaintiff was admitted to the emergency room and/or hospitalized on three occasions. The reason for these admissions varied, but none of them had to do with back pain. They were related to chest pain, cellulites, phlebitis, and swelling in plaintiff's leg. None of these visits were related to any compensable injury.
20. Dr. Robert Parris was called to consult during plaintiff's hospitalization from April 5 through April 10, 2006. The reason for plaintiff's hospitalization related to chest pains, as well as lower extremity discomfort. Dr. Parris did not relate plaintiff's deep venous thrombosis or cardiac problems to her back injury.
21. Ms. Patterson evaluated plaintiff on August 21, 2006, approximately one year and three months after the accident. Ms. Patterson noted plaintiff's pain was controlled with medication and that plaintiff continued using a walker for ambulation.
22. At her deposition, Ms. Patterson opined that plaintiff's fall at work on May 17, 2005 either caused or aggravated the mild compression fracture of L2, either caused or aggravated plaintiff's herniated disc at T11-12, and aggravated plaintiff's pre-existing back pain symptoms. However, Ms. Patterson could not identify exactly what was the cause of plaintiff's pain and admitted that she would always assume that any fall would aggravate a patient's pre-existing condition. Additionally, Ms. Patterson conceded that there was nothing, other than the temporal relationship between plaintiff's fall and her symptoms, which would support any inference that one was caused by the other. Further, Ms. Patterson would not defer to any of the medical doctors that treated plaintiff after her fall. *Page 8 
23. Ms. Patterson testified that plaintiff's lower back pain is a chronic condition and that plaintiff will need medication for the rest of her life.
24. Plaintiff has not returned to work at any time since the May 17, 2005, accident. Furthermore, plaintiff has made no effort to look for work since her fall.
25. Although plaintiff testified she has continued to experience significant back pain since her injury, she ultimately conceded that by August 21, 2006, her pain was a four out of ten. None of the doctors that treated plaintiff offered any further treatment other than continued pain management, which plaintiff received prior to her injury by accident. Plaintiff's condition with respect to her back is essentially the same now as it was prior to the accident.
26. Plaintiff asserted she sustained an injury to her left leg as part of her fall as a result of an alleged bruise on her leg that she stated did not go away over time. There was insufficient medical evidence to corroborate this testimony.
27. Prior to plaintiff's fall, Ms. Patterson had prescribed Lorcet 10/650, which is a narcotic medication, as well as Baclofen 10 mg for back pain. Plaintiff's current medications, which have remained constant since her injury, are Percocet 10/650 and Flexeril 10 mg. The Percocet replaced the Lorcet, and the Flexeril replaced the Baclofen. However, these are essentially identical medications. Plaintiff is on the same medication now that she was taking prior to her compensable injury. Her dosage is unchanged.
28. The Full Commission gives greater weight to the testimony of Drs. Igwilo, Moyle, and Jaikumar than to the testimony of Ms. Patterson.
29. Based upon the greater weight of the evidence, plaintiff failed to show that she suffered an L2 compression fracture or a T11-12 herniation as a result of the May 17, 2005 injury by accident. Based upon the greater weight of the evidence, defendants have shown that any *Page 9 
medical treatment plaintiff has received since August 21, 2006 is not related to her compensable injury by accident.
30. Plaintiff's ongoing conditions, including back pain, venous thrombosis, cellulites, cardiac problems, and certain falling episodes in 2006 are not related to her fall. Defendants are not responsible for ongoing medical treatment.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on May 17, 2005. N.C. Gen. Stat. § 97-2(6). Plaintiff is not permanently and totally disabled. N.C. Gen. Stat. §§ 97-29 and 97-2(9).
2. Defendants' Form 22 accurately reflects plaintiff's average weekly wage and compensation rate. N.C. Gen. Stat. § 97-2(5). Plaintiff is entitled to receive disability compensation in the amount of $248.21 per week from May 17, 2005 and continuing to August 21, 2006 when any aggravation of her back condition returned to baseline and she reached maximum medical improvement. N.C. Gen. Stat. § 97-29.
3. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283,286, disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Sneadv. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim *Page 10 
compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. See also Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006). 4. In the case at bar, the Parsons presumption creates a rebuttable presumption that plaintiff's current back condition is causally related to the compensable injury by accident. Parsons v. Pantry, Inc., supra. However, defendants have shown through the competent, credible evidence that any medical treatment plaintiff received after August 21, 2006 is not directly related to the compensable injury. Thus, plaintiff is not entitled to any further medical treatment as her current condition is not related to her compensable injury by accident. N.C. Gen. Stat. § 97-2(9).
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's temporary total disability benefits are hereby terminated effective August 21, 2006. Defendants are entitled to a credit for any temporary total disability benefits paid since August 21, 2006.
2. Defendants shall not be responsible for additional medical treatment. Plaintiff's claim for further benefits must under the law be and is hereby denied. *Page 11 
3. If they have not already done so, defendants shall pay the costs, including expert witness fees to Dr. Henry Moyle in the amount of $525.00, Ms. Gerri Patterson in the amount of $225.00, and Dr. Robert Parris in the amount of $500.00.
This the 19th day of December 2007.
 S/______________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
S/ ______________________ PAMELA T. YOUNG CHAIR
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1