***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer.
3. On 12 April 2002, the carrier liable on risk was Liberty Mutual Insurance.
4. Plaintiff's average weekly wage is $1,075.60 per week yielding a weekly compensation rate of $654.00, the maximum rate for 2002.
5. Plaintiff employee sustained an injury by accident arising out of and in the course of his employment with defendant-employer on 12 April 2002.
6. Plaintiff is currently receiving ongoing total disability compensation from defendants.
7. At the hearing, the parties submitted a Packet of Various Stipulated Documents which was marked as Stipulated Exhibit (1) and which contained the following:
 a. A Pre-Trial Agreement;
 b. The Full Commission's Opinion and Award dated 8 February 2006;
 c. The Hearing Transcript for the 11 January 2005 hearing held before Deputy Commissioner J. Brad Donovan;
 d. Medical Records of Dr. Joseph E. Burkhardt of Great Lakes Sports Medicine Orthopedic Center for the period of 3 May 2006 through 12 October 2006;
 e. Vocational Reports and correspondence of Michigan Rehabilitation Services Disability Management Program for the period of 26 September 2005 through 13 October 2006;
 f. An Industrial Commission Form 25N dated 2 October 2006;
 g. Motions and Forms filed subsequent to Full Commission's 8 February *Page 3 
2006 Opinion and Award which included the following;
 (1) Plaintiff's Motion to Show Cause with Exhibits dated 8 June 2006;
 (2) Plaintiff's Affidavit dated 8 June 2006;
 (3) An Industrial Commission Form 61 Denial of Workers' Compensation Claim dated 9 August 2006;
 (4) An Industrial Commission Form 33 Request that Claim be Assigned for Hearing dated 28 August 2006;
 (5) An Order for Mediated Settlement Conference dated 30 August 2006;
 (6) An Order Excusing Case from Mediated Settlement Conference dated 3 October 2006;
 (7) An Industrial Commission Form 33R Response to Request that Claim be Assigned for Hearing dated 4 October 2006;
 (8) An Amended Form 33 Request that Claim be Assigned for Hearing dated 16 November 2006;
 (9) An Addendum to Plaintiff's Motion to Show Case dated 29 November 2006;
 (10) Defendants' Motion to Compel Cooperation and To Substitute Vocational Specialists dated 22 May 2007, and;
 (11) Plaintiff's Response to Defendants' Motion to Compel Cooperation and To Substitute Vocational Specialists dated 31 May 2007.
 h. Also submitted as part of Stipulated Exhibit (1) were Vocational records *Page 4 
of Mr. Jack Dainty of Cascade Disability.
8. Subsequent to the hearing, the parties submitted a Packet of Documents related to the prior hearing before Deputy Commissioner Donovan, and which is admitted into the record, and marked as Stipulated Exhibit (2).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Houser, plaintiff was forty-three (43) years old and residing in Hickory Corners, Michigan.
2. On April 12, 2002, plaintiff sustained an admittedly compensable injury by accident to his right leg and ankle while working as a cable television line foreman with defendant-employer. The compensability of this incident was admitted by defendants through the filing of an Industrial Commission Form 60, pursuant to which defendants began paying to plaintiff ongoing total disability compensation payments at the rate of $654.00 per week.
3. Subsequent to his admittedly compensable injury, plaintiff relocated to Michigan and a new authorized treating physician was not immediately assigned. Plaintiff sought authorization to see Dr. William Comai at Battle Creek Orthopedics, but authorization was refused. Eventually, plaintiff filed a motion with the Industrial Commission for medical treatment and to designate a physician of plaintiff's choosing. The Industrial Commission issued an order on June 19, 2003, ordering defendants to "provide for plaintiff to undergo a one-time evaluation by a physician in Michigan."
4. Therefore, at the direction of defendants, plaintiff presented to Dr. Joseph *Page 5 
Burkhardt in Michigan on August 13, 2003. Plaintiff reported to Dr. Burkhardt that he was experiencing right ankle pain and left medial sided knee pain. Dr. Burkhardt diagnosed plaintiff with possible osteochondral injury to the talus due to repeat sprains and lateral ankle instability, and medial compartment chondromalacia and/or a possible torn meniscus. Dr. Burkhardt recommended an MRI of both the ankle and knee. The MRI was performed and the MRI of plaintiff's left knee revealed an osteochondral defect or flap.
5. Following his examination by Dr. Burkhardt, plaintiff sought authorization from defendants to proceed with Dr. Burkhardt's recommendations and to have Dr. Burkhardt designated as his authorized treating physician. Defendants refused. Plaintiff eventually filed a request for hearing regarding his medical treatment, vocational rehabilitation and reimbursement for school tuition payments. This matter was heard by Deputy Commissioner J. Brad Donovan on January 11, 2005. In his Opinion and Award, Deputy Commissioner Donovan designated Dr. Joseph Burkhardt as plaintiff's authorized treating physician and ordered defendants to reimburse plaintiff for his college tuition.
6. Defendants then appealed to the Full Commission, which issued its Opinion and Award on February 8, 2006. The Full Commission found that plaintiff had not received additional treatment that had been recommended by Dr. Burkhardt and that defendants had not provided a reasonable explanation for refusal to approve said treatment. The Full Commission also concluded as a matter of law that plaintiff was entitled to have defendants pay for related medical expenses incurred or to be incurred by plaintiff as a result of his admittedly compensable right ankle injury and Dr. Burkhardt was approved as plaintiff's authorized treating physician. Additionally, the Full Commission provided that should plaintiff deem it necessary, Mr. Ed Keeter or another vocational rehabilitation specialist shall be reinstated to assist him in obtaining *Page 6 
employment following completion of his college courses.
7. On April 9, 2001, plaintiff twisted his left knee while working for the defendant-employer. He was diagnosed as having left knee strain. Plaintiff was out of work for approximately six weeks and returned to work without restrictions. Plaintiff contends that he had no further problems with his left knee until his April 12, 2002 compensable injury to his right ankle and leg. Furthermore, plaintiff contends that his left knee condition is causally related to his April 12, 2002 compensable injury due to an altered gait because of his right ankle pain.
8. Dr. Burkhardt testified that plaintiff reported that his left knee pain began after striking it while working as a welder, following which plaintiff received treatment and was advised that it may be a meniscal tear. At the hearing before Deputy Commissioner Donovan on January 11, 2005, plaintiff testified that he worked as a fabrication welder before coming to work with defendant-employer. There is no evidence that plaintiff ever performed welding tasks while working for defendant-employer.
9. Dr. Burkhardt testified that such an osteochondral defect or flap injury generally occurs from a direct contact with the knee. Dr. Burkhardt further testified that such an injury could also be caused by a forceful twisting motion where the condyle surfaces catch on each other and tear. Finally, Dr. Burkhardt testified that the osteochondral defect or flap injury found on plaintiff's MRI would not likely be caused by any altered gait plaintiff may have had following his right ankle injury.
10. Dr. Burkhardt stated that he could not say to any reasonable degree of medical certainty that the osteochondral defect or flap injury found on plaintiff's MRI was caused by an altered gait resulting from the ankle injury for which he treated plaintiff. In fact, Dr. Burkhardt *Page 7 
stated that to do so would be guessing.
11. There is no credible evidence of record upon which to find that plaintiff's left knee condition for which he has received treatment from Dr. Burkhardt is the direct and natural result of or causally related to his April 12, 2002 injury by accident.
12. There is no credible evidence of record upon which to find that plaintiff's left knee condition is the result of an injury by accident arising out of and in the course of his employment with defendant-employer.
13. Although Dr. Burkhardt has treated plaintiff' left knee condition and the Full Commission authorized him as plaintiff's treating physician in its February 8, 2006 Opinion and Award, the Full Commission did not find or conclude as a matter of law that plaintiff's left knee condition was causally related to his April 12, 2002 compensable injury. Accordingly, any assertion by plaintiff that his left knee condition and related treatment is controlled by the Full Commission's February 8, 2006 Opinion and Award is misplaced.
14. Plaintiff filed a contempt motion on November 29, 2006 as defendant-carrier had removed plaintiff's Michigan vocational rehabilitation consultant in violation of the Full Commission's February 8, 2006 Opinion and Award. On January 10, 2007 Deputy Commissioner Houser ordered that "Michigan state vocational rehabilitation efforts through Mr. Mike Wilson (of the Michigan state agency charged with rehabilitation) are reinstated and shall be paid for by defendants with Mr. Wilson coordinating with Mr. Jack Dainty, defendants' chosen North Carolina based vocational rehabilitation professional."
15. Defendants defense of this matter related to vocational rehabilitation has been unreasonable and based in stubborn, unfounded litigiousness and subjects them to sanctions in the form of attorney's fees. *Page 8 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On April 12, 2002, plaintiff sustained a compensable injury to his right ankle for which he is entitled to total disability compensation to be paid by defendants at the rate of $654.00 per week through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. §§ 97-2(6); 97-29.
2. Because the condition for which plaintiff seeks medical treatment is his left knee as opposed to his originally compensable right ankle injury the Parsons' presumption does not apply. See, Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006). Accordingly, it remains plaintiff's burden to prove a causal link between his April 12, 2002 injury by accident and his left knee condition. Id.; Snead v.Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970).
3. There is no credible evidence of record upon which to conclude that plaintiff's left knee condition for which he has received treatment from Dr. Burkhardt is the direct and natural result of or causally related to his April 12, 2002 injury by accident. N.C. Gen. Stat. § 97-2(6). Likewise, there is no credible evidence of record upon which to conclude that plaintiff's left knee condition is the result of an injury by accident arising out of and in the course of his employment with defendant-employer. Id.
4. As the result of the April 12, 2002 compensable injury to his right ankle, plaintiff continues to be entitled to have defendants pay for all related medical expenses incurred, or to be *Page 9 
incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-25; 97-25.1.
5. As the result of the April 12, 2002 compensable injury to his right ankle, plaintiff continues to be entitled to have defendants provide vocational rehabilitation in Michigan from Mr. Mike Wilson who shall coordinate in a more thorough and consistent manner with Mr. Jack Dainty, defendants' chosen North Carolina based vocational rehabilitation professional.
6. Because defendants' defense of this matter related to vocational rehabilitation has been unreasonable and based in stubborn, unfounded litigiousness, plaintiff is entitled to the award of sanctions in the form of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay plaintiff ongoing total disability compensation at the rate of $654.00 per week through the present and continuing until such time as he returns to work or further Order of the Commission. This compensation is subject to the attorney's fee awarded herein.
2. Defendants shall continue to pay for all related medical expenses for treatment incurred or to be incurred by plaintiff as the result of his April 12, 2002 right ankle injury, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
3. Pursuant to N.C. Gen. Stat. § 97-88.1, defendants shall pay directly to plaintiff's counsel a reasonable attorney fee based upon an affidavit submitted by counsel itemizing her time and services expended in prosecuting this claim. *Page 10 
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff and shall be paid by forwarding every fourth check directly to counsel for plaintiff.
5. Defendants shall pay the costs
This the 22nd day of January, 2008.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1