***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by The North Carolina Workers' Compensation Act.
2. On or about January 18, 2005, plaintiff's average weekly wage was $326.62 with a resulting compensation rate of $217.76, as evidenced by an I.C. Form 22.
3. On or about January 18, 2005, plaintiff was employed by defendant-employer.
4. On or about January 18, 2005, employer was Bertie Ambulance Service which was insured by American Home Assurance Company, with AIG Claim Services, Inc. acting as a servicing agent.
5. All filed Industrial Commission Forms and plaintiff's medical records were admitted into evidence as Stipulated Exhibits.
6. The following additional exhibits were received and entered into the record at the evidentiary hearing:
 a. Plaintiff's Exhibit 1 — May 15, 2007 letter from plaintiff's counsel to defendants' counsel.
 b. Defendants' Exhibit 1 — Defendants' First Set of Interrogatories and Request for Production of Documents.
 c. Defendants' Exhibit 2 — November 11, 2005 letter from Case Manager Susan Maguire.
 d. Defendants' Exhibit 3 — a completed and unsigned Form 21.
 e. Defendants' Exhibit 4 — June 8, 2007 letter from plaintiff's counsel to defendant's counsel.
 *********** *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with employer on January 19, 2005 when the driver of the ambulance in which he was riding lost control of the vehicle, causing a collision.
2. Defendant-carrier filed a Form 60, Employer's Admission of Employee's Right to Compensation Pursuant to N.C. Gen. Stat. § 97-18(b), indicating that plaintiff was involved in a vehicle accident which caused broken ribs and injury to plaintiff's back.
3. As of the date of the evidentiary hearing, plaintiff was employed full time as a fireman with the City of Rocky Mount.
4. After the accident, plaintiff was taken to Halifax Regional Medical Center where he was diagnosed with multiple abrasions and a bruise across his back. Plaintiff had a fractured right sixth rib. Plaintiff also had three other, non-displaced, rib fractures on the right. A CT scan of the head revealed no evidence of intracranial injury and plaintiff was treated symptomatically with medication. Plaintiff was discharged from the hospital on January 28, 2005.
5. While in the hospital, plaintiff was treated by Dr. Fred Wier, a surgeon in Roanoke Rapids. Plaintiff was seen for an orthopedic consult by Dr. Richard Holm on January 22, 2005, where it was noted that plaintiff's lumbar spine had some contusions and swelling.
6. Plaintiff continued to be seen after his discharge from the hospital by Dr. Wier for rib and back pain. Throughout his treatment of plaintiff, Dr. Wier's main concern was the treatment and healing of plaintiff's rib fractures. *Page 4 
7. On February 2, 2005, plaintiff was complaining of continued severe pain in the rib, on the right side. Dr. Wier suggested that the rib fracture would probably be painful for about another six months and then would decrease. Dr. Wier further recommended plaintiff seek treatment with Dr. Holm for his orthopedic-related concerns.
8. On February 9, 2005, Dr. Wier noted plaintiff had some numbness in the medial aspect of his right forearm which Dr. Wier felt would improve with time. On March 30, 2005, Dr. Wier referred plaintiff to physical therapy for a work hardening program.
9. Plaintiff underwent a work hardening program at Halifax Regional Medical Center. On April 19, 2005, the therapist noted plaintiff could lift sixty pounds repeatedly with good body mechanics and press twenty pounds overhead on his right side without problems, although that he continued to have some discomfort. Plaintiff had normal range of motion of his neck. Plaintiff was discharged with all of his physical therapy goals having been met.
10. Dr. Wier saw plaintiff again on April 20, 2005, at which time he felt plaintiff had reached maximum medical improvement. He released plaintiff to return to his normal job activities and did not prescribe any prescriptions or indicate any permanent impairment. At the time, Dr. Wier noted to plaintiff that he would probably hurt and have some pain for approximately six more months but that the rib fracture would get better.
11. On September 19, 2005, plaintiff had a general medical examination by his family physician. During that evaluation, plaintiff was noted not to have any discomfort, stiffness, or swelling of his neck. The examination of plaintiff's neck showed that it was supple with no tenderness or masses. Plaintiff's back had normal range of motion with no deformity, spasm, or tenderness. Plaintiff did not mention any problem with his neck, low back, or right arm. Similarly, when plaintiff was seen by his family physician on November 1, 2005 for complaints *Page 5 
of right wrist pain after lifting a patient at work, no references were made to back, neck or right arm pain or numbness.
12. On January 5, 2006, plaintiff was seen by Dr. Gurvinder S. Deol, an orthopaedist in Henderson, North Carolina. Plaintiff reported having increased pain in his neck and back since the motor vehicle accident of January 19, 2005. Plaintiff also complained of numbness and tingling in his right fourth and fifth fingers. Dr. Deol suggested MRIs of both the neck and the low back due to plaintiff's ongoing neck and back pain.
13. Plaintiff underwent MRIs of the neck and low back on January 30, 2006. Dr. Deol reviewed the MRI studies and concluded that plaintiff had some changes at C5-6 with bilateral forminal narrowing and some disc bulges in the lumbar spine. Based upon the results of the MRIs, Dr. Deol recommended plaintiff undergo epidural injections in the neck and back.
14. Plaintiff returned to Dr. Deol on July 13, 2006, and reported that the epidural steroid injection to his neck had helped and that his low back pain was not as bad. Dr. Deol released plaintiff indicating plaintiff was at maximum medical improvement.
15. At the request of defendants, plaintiff was seen by Dr. J. Th. Bloem on January 14, 2008 for an Independent Medical Evaluation. Plaintiff presented to Dr. Bloem with complaints of neck and low back pain, as well as complaints of numbness in the ring and little fingers of his right hand all dating back to the January 19, 2005 motor vehicle accident.
16. Dr. Bloem examined plaintiff and noted that plaintiff demonstrated lack of range of motion of the neck and low back. Plaintiff complained of pain with some of the range of motion testing, and stated that he had a lot of pain while sitting and riding in his truck. Dr. Bloem recommended a possible MRI of plaintiff's neck, a course of physical therapy for his low back and ribs, and EMG/ Nerve Conduction Studies for the numbness in his two right fingers. *Page 6 
17. Dr. Bloem indicated in his report that plaintiff was not yet at maximum medical improvement.
18. When asked whether a recurrence of symptoms after someone who had a resolution of their original symptoms from a traumatic accident would necessarily be related to the traumatic accident, Dr. Bloem stated that it would be hard to determine the cause but if the symptoms wax and wane after the accident whereas before the accident there were no symptoms, then something changed at the accident such that the recurring symptoms more likely than not relate to the original accident.
19. Greater weight is given to the opinions and testimony provided by Dr. Bloem than the opinions of Dr. Deol. Plaintiff's current condition is a result of the compensable injury by accident. Plaintiff has not reached maximum medical improvement with regards to all his compensable injuries.
20. There is no evidence that, prior to the evidentiary hearing of the case, plaintiff ever notified defendant of his need for further medical treatment. Therefore, the defense of this case was reasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of employment with defendant. N.C. Gen. Stat. § 97-2
(6).
2. It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident. Snead v. Mills, Inc., *Page 7 8 N.C. App. 447,174 S.E.2d 699 (1970). Once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Parsons v. Pantry, Inc.,126 N.C. App. 540,485 S.E.2d 867 (1997). An employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and the Parsons presumption applies. Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006). In the case at bar, the greater weight of the medical evidence establishes that plaintiff's current low back, neck and arm conditions are directly and causally related to his injury by accident on January 19, 2005. As such, the Parsons presumption applies and defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc., supra.
3. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, to include an MRI of plaintiff's neck, the course of physical therapy for plaintiff's low back and ribs, and EMG/ Nerve Conduction Studies if this treatment is still recommended by Dr. Bloem. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Plaintiff is not yet at maximum medical improvement. When plaintiff is at maximum medical improvement, he will be entitled to compensation for any permanent partial disability sustained as a result of this accident, if any such is found to exist. N.C. Gen. Stat. § 97-31.
5. The defense of this claim was reasonable. N.C. Gen. Stat. § 97-88.1.
 *********** *Page 8 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, to include an MRI of plaintiff's neck, the course of physical therapy for plaintiff's low back and ribs, and EMG/ Nerve Conduction Studies if this treatment is still recommended by Dr. Bloem.
2. When plaintiff is at maximum medical improvement, defendants will pay any permanent partial disability sustained as a result of this accident, if any such is found to exist.
3. Defendants shall pay the costs.
This the 18th day of February, 2009.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
 CONCURRING: S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1