***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Harris.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of parties.
4. Plaintiff's average weekly wage at the time of the injury with defendant-employer was $1,232.84, yielding a compensation rate of $754.00.
5. Plaintiff sustained a compensable injury by accident on May 22, 2007 while working for defendant-employer.
6. An employment relationship existed between plaintiff and defendant-employer on May 22, 2007.
7. The Phoenix Insurance Company is the carrier on the risk in this claim.
8. The issues before the Full Commission are whether plaintiff is entitled to further medical compensation in this claim and whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** EXHIBITS
The following documents were accepted into evidence as exhibits:
 • Stipulated Exhibit 1: Executed Pre-Trial Agreement
 • Stipulated Exhibit 2: Industrial Commission forms
 • Stipulated Exhibit 3: Motions and correspondence
 • Stipulated Exhibit 4: Parties' discovery responses
 • Stipulated Exhibit 5: Plaintiff's medical bills *Page 3 
 • Stipulated Exhibit 6: Plaintiff's medical records
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing before the Deputy Commissioner, plaintiff was 44 years of age. She has an associate's degree in nursing and is a licensed practical nurse.
2. Plaintiff worked for defendant-employer as a nursing supervisor at defendant-employer's Salisbury, North Carolina facility.
3. On May 22, 2007, while at work, plaintiff stepped out of an elevator, took three or four steps, slipped on a wet floor, and fell, landing on her right side. As a result of the fall, plaintiff briefly lost consciousness and, upon reviving, had extreme pain and numbness throughout her body. Plaintiff was taken to Rowan Regional Medical Center by ambulance with complaints of right shoulder pain, numbness and tingling.
4. A CT scan taken on May 22, 2007 showed severe degenerative canal stenosis at C3-4 and C4-5, but no acute process or herniation.
5. Defendants accepted plaintiff's claim on a Form 60 Employer's Admission of Employee's Right to Compensation and provided medical treatment for plaintiff's back and neck.
6. Upon her release from the hospital, plaintiff continued to have extreme pain, numbness and tingling down her right arm.
7. Plaintiff thereafter began treating with ProMed and was referred for physical therapy. On May 31, 2007, plaintiff presented for her initial physical therapy evaluation and session with complaints of right arm numbness and weakness. Plaintiff was eventually referred for an orthopedic evaluation. *Page 4 
8. On June 25, 2007, plaintiff presented to Dr. Christopher Nagy, an orthopedist, complaining of spasms and pain in her neck and low back. Dr. Nagy diagnosed plaintiff with a "muscle sprain/whiplash-type injury."
9. Plaintiff continued physical therapy until August 15, 2007 when she was discharged with a failure to meet goals. Plaintiff continued to follow up with Dr. Nagy.
10. Dr. Nagy noted that physical therapy, a TENS unit, muscle relaxers and pain medications had been unsuccessful at treating plaintiff's symptoms and referred plaintiff to a chiropractor. As Dr. Nagy noted, plaintiff did not recover from whiplash-type injuries within one to two months as most patients do. Plaintiff went through a chiropractic regimen with limited results.
11. On December 13, 2007, Dr. Nagy noted the unsuccessful treatment of plaintiff's symptoms and referred her for a pain management evaluation.
12. On January 18, 2008, plaintiff presented to Dr. Mark Romanoff, an anesthesiologist with Rowan Regional Medical Center Pain Clinic, with complaints of neck, back and shoulder pain. Dr. Romanoff diagnosed chronic neck and low back pain, cervical degenerative disc disease with cervical spinal stenosis, and myofascial pain syndrome. He recommended trigger point injections.
13. Plaintiff returned to work full duty with defendant-employer on February 21, 2008.
14. On April 2, 2008, Dr. Nagy noted that plaintiff continued to have occasional pain and spasms in her neck, but that she was doing better and was tolerating her regular job. He released plaintiff from his care, instructed her to continue to follow up with the pain clinic, and assigned a five percent permanent partial impairment rating for plaintiff's back. *Page 5 
15. Plaintiff last treated with Dr. Romanoff on April 21, 2008. On that visit, Dr. Romanoff noted that the trigger point injections had been helping, and he deferred additional injections.
16. Plaintiff resigned from her position with defendant-employer effective June 7, 2008. Plaintiff went to work with the VA Medical Center in June 2008 as a charge nurse. Her heaviest physical requirement in that job was pushing a cart that weighed about 50 pounds, which was within plaintiff's activity restrictions related to her compensable injury.
17. On June 30, 2008, plaintiff had an evaluation with Dr. Stephen Shaffer for a second opinion on her impairment rating. Dr. Shaffer assigned a seven percent permanent partial impairment rating for plaintiff's back.
18. On June 30, 2008, plaintiff and defendants executed a Form 26AEmployer's Admission of Employee's Right to Compensation forPermanent Partial Disability in which they agreed that plaintiff sustained a compensable injury to her neck and low back on May 22, 2007 and that plaintiff was entitled to payment for a six percent permanent partial impairment rating for her back. This agreement was approved by the Industrial Commission on September 11, 2008.
19. In September 2008, plaintiff went to work as a treatment nurse with Alston Brooks Nursing ("Alston Brooks"). She continued to work in that job as of the date of the hearing before the Deputy Commissioner. Her heaviest physical requirements in that job were pushing a cart that weighed about 50 pounds and lifting patient charts weighing up to about 25 pounds. Again, these tasks were within plaintiff's work restrictions related to her compensable injury. Plaintiff did no heavy lifting in her Alston Brooks job outside of her restrictions. *Page 6 
20. After plaintiff executed the Form 26A, she continued to have neck and back pain and numbness down her right arm.
21. Prior to starting her job with Alston Brooks, plaintiff tried to get defendants to authorize additional medical treatment for her compensable injury. However, defendants would not authorize the treatment.
22. On November 5, 2008, plaintiff contacted Dr. Nagy's office seeking a referral back to the pain clinic.
23. On December 5, 2008, plaintiff presented to Dr. Robert Sullivan, who also practiced pain management medicine at Rowan Regional Center Pain Clinic. She complained of continued pain in her neck, shoulder and back, with numbness and pain going down her right arm. Dr. Sullivan diagnosed cervical radiculopathy, cervical degenerative disc disease, and fibromyalgia. Dr. Sullivan ordered a cervical MRI.
24. Subsequently, defendants denied any further medical treatment by filing a Form 61 Denial of Workers' Compensation Claim
dated February 16, 2009, contending that plaintiff's symptoms were related to an intervening incident with a new employer.
25. Plaintiff filed an expedited motion for medical treatment. On July 16, 2009, Deputy Commissioner Theresa Stephenson declined to rule on said motion and referred the matter for a full evidentiary hearing.
26. Defendants then moved to have Alston Brooks and its carrier, Key Risk Insurance Company, added as defendants. The Deputy Commissioner allowed said Motion by Order filed on July 30, 2009.
27. Because of defendants' denial of further treatment, plaintiff was unable to follow up with Dr. Sullivan until August 7, 2009. She underwent a cervical MRI on September 18, *Page 7 
2009, which showed right-sided nerve compression at C3-4 and C4-5. Dr. Sullivan believed this compression was the potential cause of plaintiff's right-sided pain and numbness. Dr. Sullivan also believed the September 18, 2009 MRI was consistent with the earlier CT scan.
28. On October 8, 2009, Dr. Sullivan administered a cervical epidural steroid injection.
29. Dr. Sullivan recommended a repeat MRI, because of concerns over a finding at the C-2 level on the September 18, 2009 MRI. The repeat MRI was completed on November 8, 2009. Based on the findings on the repeat MRI, Dr. Sullivan recommended a neurosurgical consultation for plaintiff.
30. Plaintiff continued to treat with Dr. Sullivan for her neck symptoms as of the hearing with the Deputy Commissioner.
31. Plaintiff did not sustain any injury or aggravation of her neck symptoms after leaving the employment of defendant-employer, either working with her subsequent employers or otherwise. Plaintiff and Rhonda Hargrave, plaintiff's supervisor with Alston Brooks, both testified plaintiff did not sustain any injury while employed with Alston Brooks. Based on this testimony, along with the lack of any other evidence in the record of any subsequent injury or aggravation, the Deputy Commissioner granted Alston Brooks' and its carrier Key Risk's motion to be dismissed from this claim with prejudice and assessed defendants $2,000.00 in attorney's fees in favor of Alston Brooks and Key Risk in an Interlocutory Order filed on September 21, 2009.
32. Dr. Nagy testified that plaintiff never complained to him of right arm pain and that the right arm symptoms that Dr. Sullivan later treated were inconsistent with the injury Dr. Nagy had treated. Dr. Nagy opined that the degenerative cervical changes seen on the May 22, *Page 8 
2007 CT scan had progressed to the point that plaintiff became symptomatic in mid-2008 and had to seek further treatment with the pain clinic.
33. Dr. Nagy opined that the May 22, 2007 fall could have aggravated a pre-existing condition to the point that plaintiff experienced radicular symptoms. However, Dr. Nagy further indicated that the fall probably did not aggravate plaintiff's pre-existing cervical degenerative condition and trigger her right arm symptoms, because, if it had done so, he would have expected to see radicular symptoms soon after the fall.
34. Dr. Romanoff stated that the symptoms plaintiff later complained of to Dr. Sullivan, particularly the radiation of pain into the right shoulder, were consistent with the diagnosis and treatment that Dr. Romanoff provided in early 2008.
35. Dr. Romanoff further opined that although plaintiff did not complain of radicular symptoms to him, the May 22, 2007 CT scan showed that she was "set up" to have variable symptoms in the future. He further stated that the new onset of arm pain and shooting pains was consistent with the original CT scan. Dr. Romanoff believed that plaintiff probably had pre-existing cervical degenerative disc disease which was aggravated by the May 22, 2007 fall. Dr. Romanoff further opined that aggravation from the fall, in the absence of significant intervening events, probably was a significant cause of plaintiff's radicular symptoms for which she sought treatment in late 2008.
36. Dr. Sullivan felt that his treatment of plaintiff in late 2008 and 2009 was essentially a continuation of Dr. Romanoff's earlier treatment for the "same general problem." It was Dr. Sullivan's opinion that the symptoms plaintiff presented to him were consistent with injuries she sustained in the fall and that his treatment of plaintiff was causally related to the original injury by accident. *Page 9 
37. Dr. Sullivan stated that while it was possible that plaintiff's radicular symptoms were related solely to a degenerative process, or that the injuries plaintiff sustained in the fall combined with a degenerative process to produce said symptoms, he believed that the neck condition for which he was treating plaintiff was simply a progression of her initial symptoms after the fall.
38. The Full Commission gives greater weight to the expert testimony of Dr. Romanoff and Dr. Sullivan than to that of Dr. Nagy and finds by the greater weight of the medical evidence that the neck condition and radicular symptoms for which Dr. Sullivan treated plaintiff are causally related to the compensable injury by accident on May 22, 2007.
39. The treatment and diagnostic testing that plaintiff has received with and/or at the direction of Dr. Sullivan has been reasonably required to effect a cure and/or provide relief from plaintiff's compensable injury.
40. Plaintiff is not at maximum medical improvement for her compensable injuries. Further medical treatment for her compensable injuries is reasonably required to effect a cure and/or provide relief to plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 22, 2007, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 10 
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. reviewdenied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendants to prove that the medical treatment is not directly related to the compensable injury. Id.
3. In Reinninger v. Prestige Fabricators, Inc.,136 N.C. App. 225, 523 S.E.2d 720 (1999), the Court of Appeals applied the Parsons presumption to a case in which the parties entered into a Form 21 Agreement for Compensation which was approved by the Commission and therefore constituted an "award" of the Commission, pursuant to N.C. Gen. Stat. § 97-82. The Court of Appeals has also held that an employer's payment of compensation pursuant to a Form 60 is an award of the Commission and that theParsons presumption applies. Perez v. American Airlines/AMRCorp., 174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. reviewimprovidently allowed, 360 N.C. 587, 634 S.E.2d 887 (2006).
4. In the case at bar, the Parsons presumption applies and establishes that plaintiff's neck condition in 2008 is directly and causally related to her injury by accident on May 22, 2007. Defendants failed to rebut the presumption that the medical treatment is directly related to the compensable injury.Parsons v. Pantry, Inc., supra. *Page 11 
5. Plaintiff is entitled to payment by defendants of medical expenses incurred or to be incurred for the treatment for her neck condition which is causally related to her May 22, 2007 compensable fall. The approved medical expenses include treatment by Dr. Sullivan. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Defendants did not defend this claim without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
7. Plaintiff is entitled to payment by defendants for the attorney's fees associated with this appeal to the Full Commission pursuant to N.C. Gen. Stat. § 97-88. Sparks v. MountainBreeze Restaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay for the medical expenses incurred or to be incurred as a result of plaintiff's May 22, 2007 compensable injury to her neck and back, with and/or at the direction of Dr. Sullivan, including, but not limited to, diagnostic testing and imaging, prescriptions, injections and mileage, all of which are reasonably necessary to effect a cure, give relief, or lessen the period of disability. To the extent plaintiff or any third-party payor has paid for any such treatment, defendants shall reimburse such payor in full in a timely manner.
2. Dr. Sullivan is hereby designated plaintiff's treating physician for her compensable neck condition and defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for treatment by Dr. Sullivan. *Page 12 
3. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel shall submit to the attention of Commissioner Mavretic an affidavit or itemized statement setting forth the time spent preparing for, attending, and arguing this appeal to the Full Commission. Upon receipt of this affidavit, the Full Commission shall issue an Order directing defendants to pay an additional attorney's fee directly to plaintiff's counsel.
4. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay expert witness fees to each of the providers, the amounts of which were set in Orders previously filed by the Deputy Commissioner.
This 18th day of November, 2010.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ LINDA CHEATHAM COMMISSIONER
S/___________________ STACI T. MEYER COMMISSIONER