***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter. *Page 2 
2. The employee-employer relationship existed between plaintiff and defendant-employer.
3. Liberty Mutual Insurance Company was the compensation carrier on the risk on October 15, 2005.
4. This is a claim of admitted liability for a neck injury, a lower back injury, a right wrist injury, a left wrist injury, a right hip, knee and leg injury, and also a left arm and shoulder injury Plaintiff sustained at work October 15, 2005 as a result of an accident arising out of and in the course of her employment with defendant. This is also a claim, however, of denied liability for right arm and shoulder injuries plaintiff contends she sustained in the same incident.
5. Plaintiff's average weekly wage is $1,056.00, which gives rise to a compensation rate in the sum of $704.00 per week.
6. Defendants agree that, at the appropriate time, plaintiff is entitled to a second-opinion evaluation by a physician(s) of her choice on the ratings to her left shoulder, her neck and her back, at defendants' expense. In the event plaintiff's right shoulder and arm condition is found to be compensable, defendants then agree that, at the appropriate time, plaintiff would be entitled to a second-opinion disability evaluation by a physician of her choice, at defendants' expense.
7. The parties mediated this claim on February 15, 2007. At the time of the mediation, plaintiff was represented by counsel, and the settlement conference was conducted by a duly appointed mediator. An agreement was not reached between the parties.
8. Per the Rule of the North Carolina Industrial Commission, defendants paid the entire mediator's fee as a result of the February 15, 2007 mediation conference.
 *********** *Page 3 EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms, Orders and filings
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Photographs
 • Exhibit 5: Check paying accrued TTD dated 11/6/06
The following documents were accepted into evidence as plaintiff's exhibits:
 • Exhibit 1: Twelve "unanswered letters" from plaintiff's counsel to defendant-carrier's adjustor (received over defendants' objection)
Transcripts of depositions of the following were also received post-hearing:
 • Dr. Nitinchandra Desai
 • Dr. Toni Harris
 • Dr. Christopher Barnes
 • Dr. William F. Lestini
 • Robert Coke
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
FINDINGS OF FACT
1. Plaintiff was 55 years old at the time of the hearing before the Deputy Commissioner. At the time of her injury, plaintiff had worked for defendant for the prior 24 *Page 4 
years as a trucker, a position in which plaintiff drove a cart-like "truck" to haul loads around defendant's plant in Fayetteville.
2. On October 15, 2005, plaintiff was driving the truck when she hit a bolt on the floor, which caused the steering wheel to jerk out of plaintiff's hands, whereupon plaintiff lost control of the truck. The truck began spinning around rapidly and plaintiff was thrown into a flatbed of tires, causing her admittedly compensable injuries.
3. Plaintiff had a cervical fusion at C5-6 in 1990 and had no problems with her neck thereafter until the October 15, 2005 accident. She continued to work uninterrupted with defendant from 1990 through October of 2005 and missed no work time because of her neck. Also, she did not complain to her family doctor, Dr. Desai, of any neck pain in the seven years that he treated her before October of 2005.
4. With her October 15, 2005 accident, plaintiff had the immediate onset of neck and low back pain. She immediately went to the plant dispensary.
5. Plaintiff saw Dr. Desai on October 19, 2005 complaining of neck pain, discomfort on the right side, with pain radiating to her right leg. Dr. Desai placed plaintiff on light duty for ten days.
6. When plaintiff was placed on light duty status, she tried painting at the plant but could not do it because of her pain. Defendants had no other work for her and they have paid plaintiff temporary total disability compensation for the period beginning October 19, 2005 through the present, except for a period following May 8, 2005, discussed below.
7. Plaintiff continued to treat with Dr. Desai for her neck pain for which he wrote her out of work periodically through January of 2006. Dr. Desai referred plaintiff to Dr. Koo, a neurosurgeon, for further evaluation of her neck pain. *Page 5 
8. On or about January 5, 2006, defendants filed a Form 60 in which they accepted, among other injuries, a "multiple strain neck" injury on October 15, 2005 as being compensable.
9. Plaintiff presented to Dr. Koo on November 7, 2005. Plaintiff complained of neck and low back pain and pain on her right side, down her right arm and right leg, with numbness and tingling down her right arm and paresthesias in three fingers on her right hand. Dr. Koo's review of an October 24, 2005 cervical MRI showed severe degenerative changes at C3-4 and C4-5 and a right-sided disk herniation at C6-7. In addition to lumbar diagnoses, Dr. Koo diagnosed multiple-level cervical spondylosis with radiculopathy and cervical sprain/strain, both of which she related to the work accident.
10. On December 8, 2005, Dr. Koo reviewed the cervical myelogram results which confirmed plaintiff did not need immediate medical attention and recommended that plaintiff undergo physical therapy before any surgical consideration.
11. On March 10, 2006, Dr. Koo declined further involvement in plaintiff's treatment at that time because "this office has had some negative experiences with the Worker's Comp for (defendant) which is Liberty Mutual."
12. On December 19, 2005, plaintiff presented to the office of Dr. Lestini for neck, back, and right leg pain. She treated conservatively with Dr. Lestini. Based on normal EMG and nerve conduction studies of April 14, 2006 showing no evidence of radiculopathy, plexopathy, or neuropathy and a discordant discogram, Dr. Lestini found plaintiff to be at maximum medical improvement and released her on May 1, 2006 to return to full duty work with respect to her lower back.
13. Plaintiff underwent physical therapy from December 28, 2005 through April 24, 2006. *Page 6 
14. Plaintiff has also treated with Drs. Parikh and Harris for pain management for her neck, low back and radicular symptoms.
15. With regard to her shoulders, plaintiff presented to Dr. Barnes on January 30, 2006 with a chief complaint of left shoulder pain. Following some conservative treatment, plaintiff underwent a left shoulder arthroscopy on March 14, 2006, with a post-operative diagnosis of acromioclavicular joint arthrosis.
16. On February 7, 2007, Dr. Barnes released plaintiff to full duty work with regard to her left shoulder and assigned a 15% permanent partial impairment rating for the left shoulder. At this visit, plaintiff stated that she wanted to have her right shoulder evaluated also, because it was "bothering her more than her left side."
17. Plaintiff underwent surgery to her right shoulder with Dr. Barnes on March 15, 2007.
18. Plaintiff's neck pain has continued to worsen since her accident.
19. Plaintiff had a cervical MRI done in February of 2007. She followed up with Dr. Koo on May 9, 2007. Dr. Koo reviewed the second MRI and stated that it showed increasing spondolytic changes at multiple levels with herniations at C3-4, C4-5 and C6-7 and a right paracentral disk osteophyte complex at C6-7. Dr. Koo noted that the disk herniation at C6-7 was more prominent that it had been in the October 2005 MRI. Dr. Koo recommended a three-level fusion with diskectomy and instrumentation, with the caveats that plaintiff's symptoms might get better or worse and that, with plaintiff's prior fusion at C5-6, she would run a higher risk for complications. Despite the caveats, plaintiff wanted to undergo the surgery because she was in so much pain. *Page 7 
20. Before Dr. Koo's scheduled surgery of May 21, 2007, the evidentiary hearing in this matter was held, at which time defendants' Motion was allowed to have Dr. Lestini evaluate plaintiff post-hearing and comment upon Dr. Koo's surgical recommendation and the relatedness of plaintiff's current neck symptoms to the accident.
21. Dr. Lestini evaluated plaintiff on July 24, 2007 and was subsequently deposed on August 21, 2007. Dr. Lestini did not contravene Dr. Koo's surgical recommendation. As to whether the progressive worsening of plaintiff's neck condition is causally related to the accident, Dr. Lestini testified on direct examination that "you could say that there might be at least a partial causality to the work event causing these degenerative discs to become symptomatic and then progressively so" and that the accident "could very well have caused this to occur." On cross-examination, Dr. Lestini testified, based on a hypothetical that conformed to the facts in this claim, "Most likely the accident caused these discs to become symptomatic and persistently so to the point where now she needs to consider surgical options." At no time did Dr. Lestini testify that plaintiff's worsening neck condition is not directly related to the accident.
22. Dr. Lestini further opined that plaintiff's right shoulder and hand symptoms are more than likely related to the problems seen on the February 2007 MRI as axillary and radicular symptoms from the neck injury, and that, as such, they have been caused by the accident in the same manner in which the progressive worsening of plaintiff's neck symptoms has been.
23. Dr. Barnes, an orthopedic surgeon, testified that the physical damage to both of plaintiff's shoulders that he treated and for which he performed surgeries was not caused by her work accident. However, defendants had already accepted plaintiff's left shoulder claim as compensable when this testimony was taken. Plaintiff did not withdraw her claim contending *Page 8 
that mechanical problems in her right shoulder were related to the injury by accident until the filing of her contentions.
24. As Dr. Barnes treated plaintiff for her shoulder problems, including the performance of arthroscopic surgery to both shoulders, more weight is given to his opinion and the Full Commission finds that plaintiff's mechanical problems to her left and right shoulders were not caused or aggravated by the compensable injury by accident.
25. On June 4, 2007, Dr. Barnes cleared plaintiff for neck surgery, vis-a-vis her recovery from the right shoulder surgery.
26. On or about May 19, 2006, defendant-carrier's adjustor, Robert Coke, filed with the Industrial Commission a Form 28 Return to Work Report representing that plaintiff had returned to work on May 1, 2006. This was inaccurate. Defendants also unilaterally terminated plaintiff's temporary total disability compensation as of May 8, 2006. For his part, Mr. Coke testified that he based the Form 28 filing and termination of plaintiff's compensation on Dr. Lestini's full duty release regarding plaintiff's low back on May 1, 2006. Mr. Coke admitted that he did not recall anyone telling him that plaintiff had returned to work prior to his filing the Form 28.
27. Upon the filing of the Form 28 and the unilateral termination of her compensation, plaintiff retained counsel, who filed a Motion to Reinstate Compensation. On September 29, 2006, Executive Secretary Weaver filed an Order directing defendants immediately to reinstate temporary total disability compensation retroactive to May 1, 2006 and to continue paying it at the rate of $704.00 per week on a weekly basis until further Order of the Commission. *Page 9 
28. On or about November 6, 2006, following an October 20, 2006 letter to Mr. Coke from plaintiff's counsel, defendant-carrier paid plaintiff back temporary total disability benefits from May 15, 2006 through November 5, 2006, an amount totaling $17,600.00.
29. Later in November of 2006, Mr. Coke unilaterally adjusted plaintiff's disability payments downward to $563.20 per week to recoup what he contended was a $1,408.00 overpayment.
30. Following plaintiff's filing, on or about May 31, 2006, of a Form 33 Request for Hearing, this claim was routinely ordered into mediation and a mediator was designated, as one had not been selected by the parties.
31. Defendants did not file a Form 33R in this claim until August 9, 2007, nearly three months after the hearing.
32. Plaintiff's counsel paid $75.20 for a copy of the transcript of Dr. Lestini's deposition and $390.30 for Mr. Coke's deposition. Also, plaintiff paid Carolina Imaging $33.00 for a copy of her MRI films and incurred $58.20 in mileage to deliver the films to Dr. Lestini's office in advance of his deposition.
33. The treatment that plaintiff has heretofore received and which will be required in the future for her compensable injuries with Drs. Desai, Parikh, Harris and Koo has been and will be reasonably required to effect a cure and/or provide relief for plaintiff.
34. On or about March 7, 2007, defendants filed a Form 24 Application seeking the termination of plaintiff's ongoing temporary total disability compensation on the grounds that plaintiff is no longer disabled within the meaning of the Act, that she has been released from care without restrictions and that she has refused suitable employment. There is no evidence suggesting that plaintiff has refused suitable employment. *Page 10 
35. Plaintiff is not at maximum medical improvement with regard to her compensable injuries.
36. Defendants did not unreasonably defend this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury."Pittman v. Thomas Howard, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286,disc. review denied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry, Inc.,126 N.C. App. 540,485 S.E.2d 867 (1997) that once the Commission has found a claim compensable, a rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to defendant to prove that the medical treatment is not directly related to the compensable injury. Id. The Court of Appeals has held that an employer's payment of compensation pursuant to a Form 60, as in the case before us, is an award of the Commission and that theParsons presumption applies. See also Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005), disc. review improvidentlyallowed 360 N.C. 587, 634 S.E.2d 887 (2006).
2. This being a claim in which defendants accepted a "multiple strain neck" injury, plaintiff is entitled to a rebuttable presumption that the recommended neck surgery is directly *Page 11 
related to her compensable injury and defendants must show that said surgery is not directly related to the compensable injury. Defendants have failed to rebut the presumption. In fact, even if the burden were on plaintiff, Dr. Lestini's testimony that most likely the accident caused plaintiff's discs to become symptomatic and persistently so to the point where now she needs to consider surgical options would carry the burden. In the case at bar, the greater weight of the medical evidence establishes that plaintiff's back conditions in 2004 are directly and causally related to his injury by accident on January 1, 1999. As such, the Parsons presumption applies and defendant failed to rebut the presumption that the medical treatment is directly related to the compensable injury. Perez v. American Airlines, supra. As such, plaintiff's current neck condition is compensable and she is entitled to receive the neck surgery that Dr. Koo has recommended.
3. Plaintiff has not reached maximum medical improvement for all her compensable injuries. Plaintiff's compensable neck condition will require multi-level fusion surgery. As such, plaintiff is entitled to ongoing temporary total disability compensation. Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993); N.C. Gen. Stat. § 97-29.
4. As plaintiff has not been released to full duty work with respect to all her compensable injuries and defendants have offered no evidence that plaintiff was offered suitable employment, defendants' Form 24 Application filed on or about March 7, 2007 is disapproved. N.C. Gen. Stat. § 97-18.1.
5. Plaintiff's mechanical left shoulder problem for which she had surgery on March 14, 2006 is not causally related to the work-related accident. However, due to overlapping symptoms of her mechanical shoulder problems and her compensable neck injury, defendants had admitted liability for it prior to Dr. Barnes testimony indicating it was not related. With *Page 12 
regard to plaintiff's right shoulder problem, plaintiff has not proven that is it causally related to her work-related accident. Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
6. Plaintiff is entitled to have defendants pay for the past medical treatment and physical therapy she has received for her compensable injuries with and at the direction of Drs. Desai, Parikh, Harris and/or Koo. Plaintiff is also entitled to further medical treatment for her compensable injuries with Drs. Desai, Harris and Koo. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
7. For its filing of the untruthful Form 28 and unilateral termination of benefits on or about May 8, 2006, and further for its failure to comply promptly with the Executive Secretary's September 29, 2006 Order directing it immediately to reinstate temporary total disability benefits, defendant-carrier should be sanctioned with fines in the amount of $3,500.00 payable to the Industrial Commission. North Carolina Industrial Commission Workers' Compensation Rule 802.
8. In the discretion of the Full Commission, defendant-carrier should also be fined in the amount of $250.00 for its unilateral "recoupment" of $1,408.00 from plaintiff's temporary total disability payments following the Executive Secretary's September 29, 2006 Order that the ongoing checks be in the full amount of $704.00. North Carolina Industrial Commission Workers' Compensation Rule 802.
9. Defendant-Carrier should also be fined in the amount of $250.00 for its failure to file a timely Form 33R. Considering the circumstances, defendant-carrier should not be fined for any delay in the mediation process. North Carolina Industrial Commission Workers' Compensation Rule 802.
10. In the discretion of the Full Commission, plaintiff is entitled to reimbursement of her outlay of $33.00 and mileage of $58.20 for delivering the MRI films to Dr. Lestini before his *Page 13 
deposition but not for the cost of the transcript of the deposition of Dr. Lestini and the cost to depose Mr. Coke. North Carolina Industrial Commission Workers' Compensation Rule 802.
11. Plaintiff is not entitled to an attorney's fee under N.C. Gen. Stat. § 97-88.1 as defendants did not unreasonably defend this claim. N.C. Gen. Stat. § 97-88.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approve herein, defendants shall continue to pay temporary total disability compensation to plaintiff on a weekly basis in the amount of $704.00 per week. Plaintiff's counsel is entitled to an attorney's fee of 25% of temporary total disability compensation paid to plaintiff from the filing of this Opinion and Award. Defendants shall pay to plaintiff's counsel every fourth check.
2. Drs. Desai, Harris and Koo are hereby designated as plaintiff's treating physicians for her compensable neck condition. Should plaintiff still desire the neck surgery that Dr. Koo has recommended and should Dr. Koo continued to recommend said surgery taking into account plaintiff's smoking habit, defendants shall authorize and pay for said surgery and all related treatment that Dr. Koo recommends.
3. Defendants shall pay for all past treatment and physical therapy with or at the direction of Drs. Desai, Parikh, Harris and/or Koo that plaintiff has received for her compensable injuries, including treatment which may have been paid by plaintiff and/or any third-party payor.
4. For the filing of an inaccurate Form 28 and untimely reinstatement of benefits, defendants shall pay to the Industrial Commission a fine of $3,500.00. *Page 14 
5. For the conduct set out in paragraph 7 of the Conclusions of Law, defendant-carrier shall pay to the Industrial Commission a fine of $250.00.
6. For the conduct set out in paragraph 8 of the Conclusions of Law, Defendant-Carrier shall pay to the Industrial Commission a fine of $250.00.
7. Defendants shall pay the costs. As part of their costs, defendants shall pay to plaintiff $33.00 for the copy of her MRI films and $58.20 in mileage. As a further part of their costs, if they have not done so already, defendants shall pay the expert witness fees previously ordered by the undersigned to Drs. Desai, Harris, Barnes and Lestini.
This the 9th day of June 2008.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1