***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Houser.
 *********** ISSUE TO BE DETERMINED *Page 2 
Whether plaintiff's left knee condition is causally related to the admittedly compensable injury by accident of October 25, 2007 and if so, to what indemnity and medical compensation, if any, is she entitled.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission which has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to the misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. On all relevant dates, an employment relationship existed between plaintiff-employee and the self-insured defendant-employer, with Key Risk Management Services as the third party administrator on the risk on the date of injury October 25, 2007.
5. On October 25, 2007, plaintiff sustained a compensable injury by accident. The parties have a disagreement and dispute as to the body parts injured and the extent of injury.
6. Plaintiff's average weekly wage was determined to be $1,070.95, which computes to a compensation rate of $714.00.
7. At the hearing before the Deputy Commissioner, the parties submitted the following exhibits: *Page 3 
 a. A Notebook of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 i. Industrial Commission Forms and Filings;
 ii. Medical Records, and;
 iii. Wage Records.
8. In addition, Plaintiff's Exhibit (1), a Packet of Email Correspondence, and Plaintiff's Exhibit (2), A Packet of Photographs of Plaintiff's Classroom, were admitted into evidence.
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date before the Deputy Commissioner, plaintiff was 48 years old. Plaintiff is a college graduate, with a degree in teaching, and has taken one year of post-graduate courses.
2. Plaintiff has been employed by defendant-employer intermittently for the past 20 years. At the time of the incident giving rise to this claim, plaintiff worked as an art teacher at defendant-employer's Newcomers School, a school that provides an English learning program for newly arrived refugees and immigrants. Plaintiff also works for defendant-employer teaching literacy on Saturday mornings.
3. On October 25, 2007, while working in her art classroom, plaintiff slipped on a wet tile floor and fell. The area of the floor in question was wet due to rain water seeping under *Page 4 
an entry door. Plaintiff testified that a custodian had previously attempted to stop the leak, but was unsuccessful. The leak had not been fixed at the time she took photographs of the classroom in late 2008.
4. Plaintiff testified that when she fell, she landed with significant force on her right side while her left leg folded awkwardly over her body. Upon impact, plaintiff experienced the immediate onset of severe pain throughout her body and was unable to stand without assistance. Plaintiff's son, Zach Sadeq, who is also employed by defendant-employer, and a colleague, Leonardo Ruiz, arrived first at the scene. Then, the school's principal, Jake Henry, and Jeff Joyce, a teacher, were called to the scene. Plaintiff was helped to her feet and assisted to her son's car.
5. Defendant admitted the compensability of the incident at issue through the filing of an Industrial Commission Form 60.
6. On the date of her fall, plaintiff sought treatment at Lake Jeanette Urgent Care where she was examined by Dr. Wagdy A. Elmahdy, who noted that her primary complaint related to right hip pain. At the hearing before the Deputy Commissioner, plaintiff testified that she also reported being in pain throughout her body. In the records from this date, there is no specific notation of plaintiff reporting pain in her left lower extremity. Dr. Elmahdy prescribed Vicodin and medically excused plaintiff from work on October 26, 2007, with the following two days being Saturday and Sunday.
7. Plaintiff testified that on Monday, October 29, 2007, she returned to work even though she continued to experience pain and swelling in her left knee.
8. On October 31, 2007, plaintiff was examined by her family physician, Dr. Reza Rezai, as part of a previously scheduled appointment for unrelated conditions. Plaintiff reported *Page 5 
having fallen at work, landing on her side and that she had experienced some improvement, but had not fully recovered. There is no reference in records from this date to plaintiff reporting pain in her left lower extremity.
9. During the period of October 31, 2007 to March 7, 2008, plaintiff did not seek additional medical treatment. Plaintiff testified that during this period, the general pain she had reported to her medical providers during late October 2007 subsided, but that she continued to experience left knee pain. Plaintiff purchased a knee brace and wore it each day, and also elevated and rested her knee. Plaintiff further testified that she believed that her left knee condition would resolve on its own.
10. During the 2007-2008 school year, Ashley Lynn Perry worked as an intern in plaintiff's classroom for one to three hours per week. Ms. Perry did not observe the accident, but did observe that plaintiff appeared to be injured when she returned to work the following week. Ms. Perry also observed plaintiff limping and having to roll around the classroom in her wheeled chair. Plaintiff spoke to Ms. Perry about her increasing left knee pain. Because of a knee injury Ms. Perry's mother had sustained and the associated symptoms she experienced, Ms. Perry testified that on multiple occasions she advised plaintiff to seek medical attention.
11. Mr. Joyce testified that he could not recall a period after the accident when plaintiff did not have symptoms. Mr. Ruiz also testified that plaintiff reported left knee symptoms to him prior to the holiday break and that she used a cane during this period.
12. Christal Massenburg, who works in the school's office, testified that plaintiff reported ongoing symptoms to her and that she advised plaintiff to seek medical attention. *Page 6 
13. Plaintiff sent emails to others outside the school asking for assistance, including Karen Spencer, Benefits Specialist, and Michelle Hayes at Academy Ahead, prior to being authorized to return for additional medical treatment.
14. In March 2008, plaintiff resigned from her second job teaching English due to her symptoms.
15. Principal Henry testified that at the time he became aware plaintiff was experiencing problems with her left knee, she did not indicate to him that her knee condition was related to her October 25, 2007 injury by accident.
16. Based upon the totality of the credible evidence of record, the Full Commission accepts as credible plaintiff's testimony regarding her injury and her ongoing left knee symptoms.
17. Plaintiff sought additional treatment at Eagle Physicians at Lake Jeanette on March 7, 2008. On an intake form from that date, plaintiff wrote that she had been experiencing left lower extremity pain for two weeks and in response to the "mechanism of injury," wrote "Nothing happened that I know of." However, plaintiff asserts that she meant no new incident that could have caused her symptoms had occurred. Dr. Rezai noted tenderness and swelling in plaintiff's lower left leg, as well as limited range of motion, ligamentous instability, and swelling in her left knee and diagnosed plaintiff with a left knee strain. Dr. Rezai also discussed plaintiff undergoing an MRI to rule out a meniscal tear and referred her to an orthopedic physician.
18. On March 10, 2008, plaintiff was examined by Dr. Paul Bednarz at Greensboro Orthopaedic Center and reported experiencing increased pain as well as popping in the medial aspect of her left knee. Records from this date reflect that plaintiff twisted her left knee during her fall in October 2007. An MRI revealed a tearing in the posterior horn of the medial *Page 7 
meniscus, degenerative changes, most notably in the medial compartment, and bursitis. For her left knee, Dr. Bednarz initially treated plaintiff with injections.
19. On April 4, 2008, defendant approved plaintiff's return to Dr. Elmahdy. Following an examination, Dr. Elmahdy sent a Request for Consultation form to Guilford Orthopaedics, noting that plaintiff reported left knee pain that had increased in severity during the previous four weeks.
20. On April 3, 2008, plaintiff sought treatment from Dr. Frank J. Rowan of Guilford Orthopaedics. Based upon a physical examination and review of plaintiff's MRI, Dr. Rowan diagnosed her as having a large "parrot beak" tear in her left medial meniscus for which he recommended arthroscopic surgery and assigned work restrictions of no standing more than ten minutes per hour, no climbing, kneeling or squatting and that she should be seated at all other times.
21. On May 2, 2008, Dr. Rowan performed a partial medial meniscectomy arthroscopic repair and debridement of chondromalacia at multiple sites for plaintiff's torn left meniscus.
22. On May 8, 2008, Dr. Rowan released plaintiff to return to light duty work which would allow her to be seated during the majority of the day. Plaintiff then returned to work for defendant-employer on May 12, 2008.
23. Dr. Rowan stated that plaintiff reached maximum medical improvement as of December 10, 2008, and assigned a permanent partial disability rating of 15% for her left leg.
24. At his deposition Dr. Bednarz testified that he did not find the time span between plaintiff's October 25, 2007 injury by accident and her presentation of symptoms and request for *Page 8 
medical treatment to be unusual, given his experience. In explaining why plaintiff may have waited so long before seeking medical attention, Dr. Bednarz stated:
 And the only theory that you can have behind that is that she may have had a small tear at that time or beforehand that was either exacerbated by the injury. So this could very well just be acute on chronic injury, which is most likely the cause of this injury. And like I said earlier, there's a lot of people that have meniscal tears that never actually have surgery. . . . And she may have. . .just not had enough pain to warrant seeing a doctor, and then finally it started bothering her enough, and then she went and saw somebody. . . .
25. Dr. Rowan agreed with Dr. Bednarz that a patient could have a meniscus tear yet be asymptomatic for a period of time. Dr. Rowan described the type of parrot beak tear plaintiff had as causing significant pain when it flips, causing the knee to lock. When the parrot beak tear lies flat, it does not hurt and sometimes patients have no symptoms. Dr. Rowan described plaintiff as a "trooper" for having endured the condition of her knee since October 2007. However, Dr. Rowan testified at his deposition that because of the size of plaintiff's meniscus tear he found during surgery, he believed that she would have been symptomatic and sought medical treatment within a few days or weeks after the injury. Accordingly, Dr. Rowan believed that the tear more likely occurred in the February or March 2008 timeframe.
26. The Full Commission gives greater weight to the causation opinion of Dr. Bednarz than to that of Dr. Rowan and finds that as the direct and natural result of and causally related to her October 25, 2007 admittedly compensable injury by accident, plaintiff sustained a left medial meniscus tear.
27. The greater weight of the medical evidence fails to show that plaintiff's pes anserine bursitis and left Achilles tendonitis were causally related to the compensable meniscus tear. *Page 9 
28. Based upon the credible medical and vocational evidence of record, and as a result of her October 25, 2007 admittedly compensable injury by accident and causally related left medial meniscus tear, plaintiff was incapable of earning any wages in her position with defendant-employer or in any other employment on October 26, 2007 and for the period of May 2, 2008 through May 11, 2008.
29. Defendant's actions in and defense of this matter were not unreasonable or indicative of stubborn, unfounded litigiousness.
30. In her Contentions and proposed Opinion and Award to the Deputy Commissioner, plaintiff raised the issue of a possible OSHA violation. However, this was not an issue listed in the Pre-Trial Agreement and is not addressed in this Opinion and Award.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 25, 2007, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be directly related to the original compensable injury. Pittman v. Thomas Howard,122 N.C. App. 124, 468 S.E.2d 283, disc. rev. denied,343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). *Page 10 
3. Plaintiff has met her burden of proof by the credible lay and medical evidence of record that her left medial meniscus tear was the direct and natural result of and causally related to her October 25, 2007 admittedly compensable injury by accident. N.C. Gen. Stat. § 97-2(6); Snead v. Mills, Inc.,supra.
4. As a result of her October 25, 2007 admittedly compensable injury by accident and causally related left medial meniscus tear, plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendant of total disability compensation at the weekly rate of $714.00 for October 26, 2007 and for the period of May 2, 2008 through May 11, 2008. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. As the result of her October 25, 2007 admittedly compensable injury by accident and causally related left medial meniscus tear, plaintiff sustained a 15% permanent functional impairment to her left leg and is entitled to payment by defendant for permanent partial disability compensation at the rate of $714.00 per week for the period of 30 weeks for the 15% rating for her left leg. N.C. Gen. Stat. § 97-31(15).
6. As the result of her October 25, 2007 admittedly compensable injury by accident and causally related left medial meniscus tear, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. §§ 97-25; 97-25.1. The approved medical compensation does not include treatment of plaintiff's pes anserine bursitis and left Achilles tendonitis which are not causally related to the compensable meniscus tear. N.C. Gen. Stat. § 97-25. *Page 11 
7. Because defendant's actions in and defense of this matter were not unreasonable or indicative of stubborn, unfounded litigiousness, plaintiff is not entitled to sanctions in the form of attorney's fees. N.C. Gen. Stat. § 97-88.1.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff total disability compensation at the weekly rate of $714.00 for October 26, 2007 and for the period of May 2, 2008 through May 11, 2008. Having accrued, and subject to the attorney's fee approved herein, this compensation shall be paid to plaintiff in a lump sum.
2. Defendant shall pay to plaintiff permanent partial disability compensation at the rate of $714.00 per week for the period of 30 weeks for the 15% permanent functional impairment to her left leg. Having accrued, and subject to the attorney's fee approved below, this compensation shall be paid to plaintiff in a lump sum.
3. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her October 25, 2007 admittedly compensable injury by accident and causally related left medial meniscus tear, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. The approved medical compensation does not include treatment of plaintiff's pes anserine bursitis and left Achilles tendonitis. *Page 12 
4. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendant shall pay the costs.
This 2nd day of December, 2009.
 S/__________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________ PAMELA T. YOUNG CHAIR
 S/__________ DANNY LEE McDONALD COMMISSIONER *Page 1