**********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Donovan, with modifications.
 **********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Commission. The Commission has jurisdiction of the parties and of the subject matter of this case.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff sustained a compensable injury by accident on December 9, 2006.
5. Plaintiff was employed by Defendant-Employer and Defendant-Employer hired three or more employees at all times relevant hereto.
6. Plaintiff's average weekly wage is $1367.42, resulting in the 2006 maximum compensation rate of $730.00 per week.
7. Defendant Brentwood Services Administrators, Inc. was the servicing agent on the risk at all times relative to this action.
8. Plaintiff stipulated that she is not claiming any accrued temporary total disability benefits, but reserves the right to claim future temporary total disability benefits.
 ********** ISSUES
1. Whether Plaintiff is entitled to additional medical treatment recommended by Dr. Kathryn A. Caulfield, as a result of her compensable injury on December 9, 2006?
2. What additional benefits, if any, is Plaintiff entitled to under the Act?
3. Was Plaintiff's alleged carpal tunnel syndrome caused by her December 9, 2006 accident? *Page 3 
4. Whether Plaintiff's alleged disability, if any, was caused by her December 9, 2006 accident and if so, whether Defendants are entitled to a credit for any unemployment compensation benefits paid and being paid to Plaintiff?
 ********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms
 b. Stipulated Exhibit #2: Medical records
 c. Stipulated Exhibit #3: Medical bills
 **********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 38 years old and had obtained her GED. She was a pharmacy technician for five years and then worked in various capacities in the automotive industry for approximately 14 years. Plaintiff was hired by Defendant-Employer in 2000 as an assistant office manager. Thereafter, Plaintiff worked for various dealerships in different locations that were all owned or were affiliates of Defendant-Employer. As of December 2006, Plaintiff was a controller/office manager for Defendant-Employer. Plaintiff oversaw the financial statements and office administration.
2. On December 9, 2006, Plaintiff attended a team building event during which she lost her balance while running, and fell forward onto hard packed sand. Plaintiff landed on her right hand, bending the hand back, and had immediate onset of pain in the right hand, wrist, and *Page 4 
arm. Defendant-Employer accepted the claim as a medical only claim and paid all of Plaintiff's related medical bills until approximately June 2, 2009.
3. On December 11, 2006, Plaintiff presented to Dr. James Foster. Dr. Foster noted that Plaintiff was having significant pain in her right hand and wrist with bruising and swelling and intermittent tingling and numbness. Dr. Foster diagnosed Plaintiff with a sprain of the right wrist and hand. He assigned lifting restrictions of no more than one pound and no repetitive work. Plaintiff followed up with Dr. Foster on December 19, 2006, with complaints of continued bruising and pain, with no numbness and tingling. Plaintiff was seen again in January, February, and April 2007, and Dr. Foster continued to document pain but no numbness and tingling.
4. On July 11, 2007, Plaintiff returned to Dr. Foster who noted that Plaintiff was complaining of intermittent numbness and continued pain. Dr. Foster diagnosed Plaintiff with a healed second metacarpal fracture of the right hand and sprain of the right hand and opined that Plaintiff had reached maximum medical improvement. He released Plaintiff without permanent impairment.
5. Plaintiff returned to Dr. Foster on September 25, 2008, with complaints of numbness. Dr. Foster noted that Plaintiff did not have any significant dysesthesias or anesthesia of her hand, but complained of some dysesthesias that would come and go in the arm. Dr. Foster opined that Plaintiff might have carpal tunnel syndrome and ordered an MRI of the wrist, and EMG studies of the right upper extremities.
6. The MRI of the right wrist was performed on October 24, 2008, and revealed no fractures, dislocation, or evidence for osteonecrosis. It was specifically noted that the *Page 5 
scapholunate and lunotriqueteral ligaments appeared intact and normal in signal intensity. Nerve conduction studies performed were consistent with moderate carpal tunnel syndrome.
7. Dr. Foster referred Plaintiff to Dr. Glenn Gaston, where Plaintiff presented on January 9, 2009. Dr. Gaston opined that Plaintiff's nerve conduction studies revealed carpal tunnel syndrome and that the exam was consistent with that diagnosis. Dr. Gaston performed an injection to the carpal tunnel. Plaintiff followed up with Dr. Gaston on March 17, 2009. Because Plaintiff received no improvement from the injection, Dr. Gaston opined that Plaintiff was not a good surgical candidate. He further opined that Plaintiff had carpal tunnel syndrome but had reached maximum medical improvement, and he released her to return to work without restrictions.
8. On June 2, 2009, Plaintiff presented to Dr. Kathryn Caulfield for a second opinion. Dr. Caulfield's impression was a persistent slight non-union at the base of her index metacarpal, partial scapholunate ligament tear in her wrist, which was negative in the MRI, and impingement along the triqueteral ligaments on the ulnar side of her wrist, as well as right carpal tunnel syndrome. Dr. Caulfield recommended a CT Scan of the right hand. Plaintiff returned to Dr. Caulfield on November 6, 2009. Based on her review of the CT scan, Dr. Caulfield's recommendation was surgery including a carpal tunnel release, a dorsal wrist exploration and scope and a triquetral ligament release. Dr. Caulfield also indicated that she would explore the right index metacarpal at the CMC joint for potential debridement of bony overhang and cyst.
9. When Plaintiff filed a Motion to Compel for authorization of future diagnostic testing (including Dr. Caulfield's diagnosis of scapholunate ligament tear and impingement of the triquetral ligament), Defendants subsequently filed an Industrial Commission Form 61 indicating that there is no medical evidence to indicate that Plaintiff's current problems of June *Page 6 
2009 were related to her December 9, 2006 injury. Plaintiff's conditions of right carpal tunnel syndrome, scapholunate ligament tear, and impingement of the triquetral ligament, have never been proven to be compensable, either through a Form 60, through payment of medical expenses, or through previous litigation.
10. All of the treating physicians agree that Plaintiff has carpal tunnel syndrome and that surgery is a viable option. While both Dr. Gaston and Dr. Foster opined that it was possible that Plaintiff's carpal tunnel syndrome was caused, at least in part, by her compensable injury by accident, neither would confirm that it was any more than a possibility. Dr. Caulfield opined that Plaintiff's fall caused the development of carpal tunnel syndrome, as well as the possibilities of the scapholunate ligament tear and impingement of the triquetral ligament. All of the treating physicians agree that the non-union at the base of her index metacarpal and the resulting need for corrective surgery is related to the healing process of the compensable injury by accident.
11. The undersigned find that Plaintiff suffered a compensable injury by accident on September 9, 2006. As a direct result, during the healing process she suffered a non-union at the base of her index metacarpal which now requires surgical intervention.
12. The undersigned find that the greater weight of the expert medical testimony is sufficient to create a causal connection between the compensable injury by accident and Plaintiff's development of carpal tunnel syndrome. No physician will discount the connection, and all the physicians find it a reasonable conclusion. Dr. Caulfield is unequivocal in her opinion and Dr. Foster cited the reasonableness of developing the condition as a result of the continuing pain of the non-union of the index metacarpal.
13. Dr. Caulfield is the only physician to opine that there is a possibility of a scapholunate ligament tear and an impingement of the triquetral ligament, based upon Plaintiff's *Page 7 
symptoms. Neither condition appears to be determinable without exploratory surgery, which would be done in conjunction with the other operations. Dr. Caulfield has opined that if the scapholunate ligament tear and an impingement of the triquetral ligament have occurred, they are causally related to the compensable injury by accident. Neither Dr. Foster nor Dr. Gaston has offered a contrary opinion. Accordingly, the Full Commission finds that the greater weight of the expert medical testimony shows that if, upon surgical exploration, there appears to be either of the ligament conditions, they are casually related to the compensable injury by accident.
14. Plaintiff's average weekly wage is $1,367.42, resulting in the 2006 maximum compensation rate of $730.00 per week, as stipulated by the parties.
 **********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on December 9, 2006, for which she missed no time from work. N.C. Gen. Stat. § 97-2(6).
2. In a claim for additional compensation for medical treatment, the treatment must be "directly related to the original compensable injury." Pittman v. Thomas Howard,122 N.C. App. 124, 130, 468 S.E.2d 283, 286, disc. reviewdenied, 343 N.C. 513, 471 S.E.2d 18 (1996). It is the burden of the injured worker to prove that the injury or condition being treated is causally related to the compensable injury by accident.Snead v. Mills, Inc., 8 N.C. App. 447, 174 S.E.2d 699 (1970). The North Carolina Court of Appeals stated in Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997), that once the Commission has found a claim compensable, a *Page 8 
rebuttable presumption arises that the treatment is directly related to the original compensable injury. The burden then shifts to Defendant to prove that the medical treatment is not directly related to the compensable injury. Id.
3. In the instant case, Defendants' payment of medical treatment for Plaintiff's continuing wrist pain is sufficient to trigger theParson's presumption regarding the specific condition of the non-union at the base of her index metacarpal which now requires surgical intervention. As Defendants have failed to rebut that presumption, Plaintiff is entitled to have Defendants pay for that procedure, and resulting loss of time from work during the recovery period and any permanent partial disability Plaintiff incurs. N.C. Gen. Stat. § 97-2(19); Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
4. The evidence shows that upon Plaintiff making claims for the remaining wrist conditions, Defendants' subsequent denial divests Plaintiff of the Parson's presumption for those conditions. However, the Full Commission concludes as a matter of law that Plaintiff has presented sufficient expert medical testimony to show a causal connection between the compensable injury by accident and the condition of carpal tunnel syndrome, as well as the ligament conditions should they be shown to exist following exploratory surgery. Booker v. Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979); Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
5. Therefore, Plaintiff is entitled to have Defendants pay for the surgeries as recommended by Dr. Caulfield and any resulting periods of disability and subsequent ratings. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ********** *Page 9 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to have Dr. Kathryn Caulfield as her authorized treating physician and Defendants' shall pay for medical treatment recommended by Dr. Caulfield, including but not limited to right wrist surgery.
2. Defendants shall pay Plaintiff temporary total disability benefits for any weeks she is unable to work as a result of the surgery recommended by Dr. Caulfield, at least through the healing period for said surgery, and continuing until further order of the Commission or there is evidence Plaintiff has been offered suitable employment.
3. A reasonable attorney's fee of 25% of the compensation awarded to Plaintiff in Paragraph 2 above is hereby approved to be deducted from sums due Plaintiff and paid directly to Plaintiff's counsel in the form of every fourth payment.
4. Defendants shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
5. As Plaintiff has not reached maximum medical improvement following surgery, this Opinion does not address the issue of permanent partial disability compensation. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due Plaintiff, either party may request a hearing from the Commission to resolve this matter.
6. Defendants shall pay the costs.
 **********
This the 3rd day of November, 2011. *Page 10 
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER